**MERAMEC VALLEY BANK, Plaintiff/Respondent,**

v.

**JOEL BIANCO KAWASAKI PLUS, INC., and Joel Bianco, Defendants/Appellants.**

**No. ED 75991.**

Missouri Court of Appeals, Eastern District, Division One.

March 28, 2000.

Daniel P. Card, Thomas Blumenthal, Paule, Camazine & Blumenthal, P.C., Clayton, for Appellant.

Paul W. Kopsky, Donald D. Heck, Kopsky & Heck, P.C., Chesterfield, for Respondent.

PAUL J. SIMON, Judge.

Joel Bianco and Joel Bianco Kawasaki Plus, Inc. (JBKP Inc.), defendants, appeal the denial of their motion to set aside a default judgment entered against them in favor of Meramac Valley Bank (bank) in the Circuit Court of St. Louis County.

On appeal, defendants contend that the trial court erred in: (1) refusing to set aside the default judgment; (2) including in its damage calculations defendants' liability in the amount of $145,000.00 on two letters of credit, because such exceeded

the scope of the petition and summons; (3) adding to the judgment against Joel Bianco, individually, the sum of $135,802.30 representing his liability on a personal guarantee, because such exceeded the scope of the petition and summons; (4) adding the sum of $135,802.30 to the judgment against Joel Bianco, individually, without making it clear that this portion of the judgment constituted joint and several liability with JBKP Inc., because such failure will permit bank a double recovery. We reverse and remand.

The record reveals that Joel Bianco and then JBKP Inc. operated a motorcycle and sports equipment dealership in St. Louis County. Bank provided financial assistance to the dealership through the grant of two loans and two letters of credit. The first note was executed by Joel Bianco, d/b/a Joel Bianco Kawasaki Plus in the amount of $45,000. The second note was executed by JBKP Inc. in the amount of $75,750.50. Both notes were secured by separate written security agreements pledging equipment, inventory, furniture, fixtures, account receivables then owned and after acquired and were filed under UCC Article 9. JBKP Inc.'s note was personally guaranteed by Joel Bianco. The first letter of credit in favor of JBKP Inc. for $40,000.00 was issued to Polaris Acceptance. The second letter of credit in favor of JBKP Inc. for $100,000.00 was issued to Bombardier Capital, Inc.

On October 3, 1997, bank filed a four count petition, seeking judgment in count I against Joel Bianco individually on the first note, in count II to replevin the property secured by the note, in count III judgment against JBKP Inc. on the second note and in count IV to replevin the property secured by that note. In addition to its petition, bank filed a bond as security and obtained an Order of Delivery on the replevin counts the same day.

On October 6, 1997 without notice to defendants, representatives from the county sheriff's office, bank and a moving company hired by bank arrived at JBKP Inc.'s premises and began seizing all of JBKP Inc.'s property pursuant to the Order of Delivery. Joel Bianco, on behalf of himself and as president of JBKP, Inc., was served with the Petition and Summons on the notes and replevin at that time. That same day, bank filed the sheriff's return showing that service of the Order of Delivery had been accomplished.

Defendants, their counsel, Joel Bianco's mother Frances Love, James Jones, bank's representative, and its counsel, other creditors and their counsel met and on October 6, 1997, the bank reached an agreement with Frances Love whereby she agreed to post as additional collateral $25,000 cash in exchange for bank ceasing the replevin action. Discussions broke down on October 8.

On October 16, 1997 bank filed a motion for redelivery, alleging that certain items of property which it had seized were subject to a superior perfected lien of Kawasaki Motors Finance Company (Kawasaki Motors) and requested leave of the court to deliver the items to Kawasaki Motors. Bank served copies of the motion on defendants and Kawasaki Motors. After a hearing, the motion was sustained on October 17, 1997.

On November 17, 1997, counsel for defendants reviewed the court file to determine whether service of process of the petition and summons for the notes and replevin had been accomplished. A sheriff's return for service of the petition and summons on the notes and for replevin had not been filed, so defendants' counsel determined that no service had been made and did not file an answer or entry of appearance. The same day, bank sent two notices to Joel Bianco as to its intent to sell the seized collateral.

On November 24, 1997, bank filed a Motion for Entry of Interlocutory Order of Default and filed the sheriff's return of service on the notes and replevin action showing service on defendants on October 6, 1997. The court entered an interlocu-

tory order of default. Defendants were not notified of the entry of the order.

On December 10, 1997, defendants and Frances Love filed, in the Circuit Court of St. Louis County, a petition against bank alleging four counts: (1) breach of contract, (2) fraud, (3) conversion, and (4) tortious interference, hereinafter referred to as the fraud action. The claim, assigned to a different division of the circuit court than bank's claim on the notes and replevin, concerns bank's initial failure to honor the two letters of credit, interfering with the sale of JBKP Inc., using the replevin action to gain an unfair advantage over other creditors, and entering into and then breaching the October 6, 1997 agreement with Frances Love to forgo further efforts of replevin in exchange for Frances Love posting $25,0000 as additional collateral.

On February 18, 1998, bank filed its answer to the fraud action, pleading affirmative defenses including: (1) the request on the Bombardier letter of credit was defective and/or that the letter had been paid; (2) that Joel Bianco, JBKP, Inc. and Frances Love lacked standing because they were not parties to the letter of credit; and (3) counts III (conversion) and IV (tortious interference) must be dismissed because Joel Bianco and JBKP, Inc. were in breach under the terms of the promissory notes and security agreements and such repossession was authorized by court order in Cause No. 97CC–003312, the notes and replevin action. Bank did not contend that this action constituted a compulsory counterclaim to the replevin action.

On February 26, 1999, a hearing on damages as to the interlocutory order of default was conducted. Defendants did not appear. Bank's executive vice president, James Robert Jones testified that bank's damages, after credits for collateral sold and other amounts recovered, were $151,400.18. Jones testified that bank allocated $15,597.88 against Joel Bianco individually for the first note, and the remainder, about $135,802.30 against JBKP, Inc.

on the second note but requested that Joel Bianco be held liable for the entire amount pursuant to his personal guarantee. Also included in the damages bank claimed, were amounts due on the two letters of credit, totaling $140,000.00 and interest on the two notes and letters of credit (totaling $96,610.73). Bank did not provide a breakdown as to what interest was due on each of the obligations or the rate of interest charged. Further as to credits given to defendants for collateral sold and other amounts recovered, bank only provided a lump sum amount of $108,249.78, with no details as to which items had been sold and the amounts collected on each sale. On March 4, 1999, the trial court entered a judgment against Joel Bianco individually in the sum of $151,400.18 and against JBKP, Inc. in the sum of $135,802.30 without specifying on which counts of bank's petition the amounts were awarded or noting that a portion of the judgment against Joel Bianco ($135,802.30) was an amount for which he was jointly and severally liable with JBKP, Inc.

Defendants became aware of the entry of the default judgment on March 23, 1999 and on the following day filed a verified Motion to Set Aside and Vacate Default Judgment, and for New Trial, pursuant to rules 75.01, 74.05 and 78.01. The trial court, believing that it had jurisdiction under the rule for only 30 days following the judgment, until April 4, 1999, held a hearing on the motion with both parties present. No witnesses were called, but counsel presented arguments. Defendants' counsel offered exhibits. Bank's counsel objected, arguing that bank had not anticipated that defendants would present evidence and requested additional time to prepare a response. The trial court granted bank until later that afternoon to respond, and received the exhibits into evidence. The exhibits offered and admitted are not identified in the record. Later that afternoon, the trial court denied the motion to set aside the default judgment.

As part of the record on appeal, defendants filed a legal file, a supplemental legal file, transcripts of the hearings on damages and motion to set aside the default judgment, and separate exhibits pursuant to rule 81.16. Bank filed a motion to strike the exhibits or in the alternative to dismiss the appeal, contending that: (1) defendants failed to make an adequate record of the exhibits submitted to the trial court in that there is no foundation, identification or description of the exhibits tendered to the trial court at the hearing on the motion to set aside the default judgment and thus such are not preserved for appellate review; (2) the exhibits were not timely made part of the legal file or supplemental legal file pursuant to rule 84.14 and were not available to bank in preparation of its brief; (3) the exhibits were not properly filed before this court because bank did not stipulate to include them as separate exhibits outside of the legal file pursuant to rule 81.16; and (4) defendants did not forward to bank a copy of the "Certificate of Service and Filing of Exhibits" and copies of the exhibits filed.

In response to bank's motion, defendants contend that they sent the exhibits and certificate of service to defendants the same day they were filed with this court. They also contend that bank agreed verbally to the filing of the exhibits outside of the record. Finally, they contend that there was an adequate foundation for the exhibits as all were marked and included a covering index which was provided to bank. There was a discussion as to whether a formal hearing was necessary and it was determined that there would be none. The trial court agreed to accept the defendants' exhibits and bank made no objection as to the authenticity, foundation and admissibility of the exhibits.

■ There is evidence to support defendants' claims that the exhibits were properly served by mail upon bank. However, the issue becomes whether the exhibits were preserved for appellate review, as there is nothing indicating that the exhib-

its filed as part of this record are the same exhibits admitted into evidence by the trial court. At the default hearing, bank identified and presented Exhibits 1–13 to the trial court, which were admitted into evidence and are preserved for appellate review. There were also exhibits presented at the hearing on the motion to set aside the default judgment, but there is no indication in the transcript of that hearing that defendants' exhibits, now labeled A–L, were the same exhibits presented to and admitted by the trial court, therefore we conclude that such are not properly preserved for our review. Exhibits A–L are stricken from the record on appeal.

In their first point, defendants contend that the trial court erred in refusing to set aside the default judgment pursuant to rule 75.01, because they established good cause to set aside the default. They allege good cause to set aside the default because: (1) defendants did not, given the traumatic events of October 6, 1997, know that they had been served with summons; (2) neither defendants nor their counsel acted recklessly or intentionally so as to impede judicial process; (3) by affirmatively pleading a breach of the promissory notes and security agreements in the subsequent fraud action and by not raising as a defense that the action should have been brought as a compulsory counterclaim in the replevin action, bank waived. or is estopped from pursuing further the replevin action; (4) counsel for bank, despite having served defendants' counsel with earlier pleadings in the replevin action improperly concealed from defendants that an interlocutory order of default had been obtained; and (5) bank failed to timely and properly respond to or supplement discovery responses in the fraud action and avoided disclosing the pendency of the replevin action.

Bank responds that the trial court did not err in refusing to set aside the default judgment because: (1) defendants were properly served; (2) defendants' failure to respond to the petition and summons on

the notes and replevin was not the result of a mistake but rather involved intentional and reckless acts and omissions, (3) defendants did not show good cause for failure to respond to the petition and summons.

Although in their motion to set aside the default judgment, defendants relied on Rule 75.01, 74.05 and 78.01, they primarily rely on Rule 75.01 in their brief. While rules 74.05 and 75.01 both provide procedural means by which to set aside judgments, rule 75.01 provides the least stringent standard because it inheres while the trial court retains jurisdiction of the case. *Brueggemann v. Elbert*, 948 S.W.2d 212, 214 (Mo.App. E.D.1997). Here, the motion was filed within thirty days of the entry of the default judgment, during the period of time in which the trial court retained jurisdiction and thus the judgment was not final at the time the motions were filed. *Brueggemann*, 948 S.W.2d at 214.

Rule 75.01 provides, in pertinent part that: the trial court retains control over judgments during the thirty-day period after entry of judgment and may, after giving the parties an opportunity to be heard and for good cause, vacate, reopen, correct, amend, or modify its judgment within that time. It requires only a showing of "good cause" and does not require a showing of a meritorious defense as required in Rule 74.05(d). *Brueggemann*, 948 S.W.2d at 214. Good cause encompasses the occurrence of mistakes or conduct that is not intentionally or recklessly designed to impede the judicial process. *Id.* Recklessness involves some element of deliberateness and of risk. *Id.*

The setting aside of a judgment is traditionally within the discretion of the trial court, and that ruling will not be interfered with in the absence of an abuse of discretion. *Id.* However, the discretion not to set aside a judgment is a good deal narrower than the discretion to set it aside, and we are more likely to interfere when the trial court has denied the motion. *Id.*

Here, defendant Bianco apparently did not realize that he had been served with the petition and summons on the notes and replevin action at the time of the replevin. Subsequently, at a meeting between the parties and their counsel, defendant Bianco's mother, Frances Love, pursuant to an agreement with the bank, agreed to pay $25,000 as additional security in exchange for bank's agreement to cease the replevin. Later, defendants' counsel checked the record for the sheriff's return of service on the action but found none. Further, defendants later filed a separate action arising out of the transaction or occurrence pled in the notes and replevin action. Plaintiff filed its answer to defendant's petition but did not allege that defendants' claims should have been pled as compulsory counterclaims in the initial action on the notes and replevin, pursuant to Rule 55.32(a). Further, the interlocutory default was entered on November 24, 1997, but, for reasons not disclosed in the record, the hearing on damages was not held until February 26, 1999 and a default judgment was entered on March 4, 1999, more than one year and three months after the interlocutory default. On March 24, about twenty days after entry of the default judgment, defendants promptly moved to set the judgment aside. The totality of the circumstances indicates that defendants' conduct was not intentionally or recklessly designed to impede the judicial process. Therefore, the trial court abused its discretion in denying defendants' motion. Defendants' first point is meritorious.

Defendants final three points relate to damages. We agree with the parties that the trial court erred in including damage calculations exceeding the scope of the petition, such as defendants' liability on two letters of credit, Joel Bianco's individual liability on a personal guarantee and failing to specify that a portion of the judg-

ment constituted joint and several liability of Joel Bianco with JBKP Inc.

JUDGMENT REVERSED AND REMANDED.

GARY M. GAERTNER, P.J. and JAMES R. DOWD, J., concur.