Anthony F. AMBROSIO, Jr. and Linda W. Ambrosio, Individually and as Personal Representatives of the Estate of Alek E. Ambrosio, Appellants,

v.

CARTER'S SHOOTING CENTER, INC. d/b/a Carter's Country, Appellee.

No. 14–99–00105–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 25, 2000.

Mitchell E. Ayer, David A. Furlow, Houston, for appellants.

William Book, David M. Gunn, Houston, for appellee.

Panel consists of Justices ANDERSON, FROST, and LEE.[*]

# OPINION

JOHN S. ANDERSON, Justice.

This is an appeal from a summary judgment in favor of Carter's Shooting Center d/b/a Carter's Country, appellee. Appellants, Anthony F. Ambrosio, Jr. and Linda W. Ambrosio, Individually and as Personal Representatives of the Estate of Alek W. Ambrosio, perfected this appeal. Appellants raise four points of error challenging the trial court's judgment. We affirm.

## I. PRELIMINARY STATEMENT

Appellants filed suit against appellee alleging (1) negligence, (2) negligence per se, (3) strict liability, and (4) gross negligence. Their claims were based on the death of their son, Alek, who was murdered during a car jacking by a man using a gun stolen from one of appellee's gun stores. Appellants claim appellee violated its duty to exercise care in the storage and display of its firearms. Appellee filed a general denial and a third-party action seeking contribution and indemnity from Raul Hernandez, Jaime Guerrero, and Francisco Rangel, the men involved in the car jacking and murder. Appellee ultimately moved for summary judgment, filing a traditional motion for summary judgment and a no evidence motion for summary judgment. The trial court granted appellee's

[*] Senior Judge Norman R. Lee sitting by assignment.

traditional motion, but denied the no evidence motion.

Appellants raise four points of error on appeal: (1) the trial court erred in granting summary judgment in favor of appellee because there are genuine issues of disputed material fact regarding the foreseeability and causation of Alek's death; (2) the trial court erred in sustaining appellee's objection to government reports and affidavit testimony of appellants' expert witnesses; (3) the trial court erred in denying appellants' motion for continuance; and (4) the trial court erred in denying appellants' motion for new trial. Appellee has raised four conditional cross-points based on its no evidence summary judgment motion. Because we affirm the trial court's judgment, we need not address these conditional cross-points on the merits.

## II. FACTUAL BACKGROUND

Appellants are the parents of Alek Ambrosio, who was murdered on October 21, 1996, during a car jacking in Fulshear, Texas (Fort Bend County). Appellee is a Texas corporation that has been in the retail gun business since 1965. Appellee operates four retail gun stores in the Houston area, including a store located on Interstate 10, referred to as the Katy Freeway store.

During the first week of October 1996, Rafael Monsivaiz and a friend, Alejandro Santillan, went to appellee's Katy Freeway store.[1] According to his sworn confession, which was given to the Fort Bend County Sheriff's Department on September 10, 1997, the pair went to the store so Santillan could purchase some ammunition for a 30–30 hunting rifle. While Santillan went to find the ammunition, Monsivaiz went to the display counter "to check out the guns." While one of appellee's employees was attending to another customer, Monsivaiz reached over the counter and "grabbed" a gun from an unlocked display case. The gun was a nine millimeter Smith & Wesson handgun. Monsivaiz then hid the handgun under his shirt and he and Santillan left the store without paying for it. When Monsivaiz stole the gun, it was not loaded.

Monsivaiz sold the $397.00 gun later that night to Santillan for $150.00. About two weeks after this "sale," Alejandro apparently loaned the gun to Francisco "Kiko" Rangel. According to Santillan, he believed the gun had then been lost. It was later determined that the gun was used in several violent crimes.

By October 21, 1996, the gun found its way into the possession of Jaime Guerrero. On that night, Rangel, Guerrero, and a third male, Raul Hernandez, were riding around in a car. Hernandez saw Guerrero had a gun and asked where he had gotten it, but Guerrero would not say. While they were driving, they noticed a white car with chrome rims, which they found desirable. According to Hernandez, Guerrero and Rangel wanted to follow the car. When Hernandez asked why, Guerrero replied that they were going to car jack the driver. The driver was Alek Ambrosio, who was on his way home from work. When Alek stopped his car, Guerrero fired several shots into the vehicle. Alek was struck in the chest and killed. Guerrero and Rangel got out of their car, pulled Alek's body out of his car, and drove off in the stolen vehicle. Hernandez left the scene driving the first vehicle.

Ultimately, Rangel and Guerrero were arrested and indicted for their roles in the murder of Alek Ambrosio. Hernandez apparently entered into a plea agreement with the State in exchange for his testimony against Rangel and Guerrero.

## III. POINT OF ERROR ONE

In their first point of error, appellants contend the trial court erred in granting appellee's motion for summary judgment on the claims of negligence and negligence

---

[1] According to Monsivaiz's confession, a third man accompanied Monsivaiz and Santillan to appellee's store; however, the third man did not enter the store.

per se because genuine issues of disputed material fact existed regarding the foreseeability and causation of Alek Ambrosio's death.

## A. STANDARD OF REVIEW

Summary judgment for a defendant is proper only when the defendant negates at least one element of each of the plaintiff's theories of recovery or pleads and conclusively establishes each element of an affirmative defense. *See Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex. 1997) (citing *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979)); *HBO, A Division of Time Warner Entertainment Co., L.P. v. Huckabee,* 995 S.W.2d 152, 155 (Tex.App.—Houston [14th Dist.] 1998), *aff'd,* 19 S.W.3d 413 (2000). When reviewing a summary judgment, the appellate court must take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *See Science Spectrum,* 941 S.W.2d at 911 (citing *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546 (Tex.1985)). If the movant's motion and summary judgment proof facially establishes its right to judgment as a matter of law, then the burden shifts to the nonmovant. *See City of Houston,* 589 S.W.2d at 678.

## B. APPLICABLE LAW

■ There are three essential elements in a common law negligence claim: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damage proximately caused by the breach. *See Werner v. Colwell,* 909 S.W.2d 866, 869 (Tex.1995); *Pinkerton's v. Manriquez,* 964 S.W.2d 39, 44 (Tex.App.-Houston [14th Dist.] 1997, pet. denied). To establish negligence per se, a plaintiff must prove: (1) the defendant's act or omission is in violation of a statute or ordinance; (2) the injured person was within the class of persons which the ordinance was designed to protect; and (3) the defendant's act or omission proximately caused the injury. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 312 (Tex.1987); *Nixon,* 690 S.W.2d at 549; *Moughon v. Wolf,* 576 S.W.2d 603, 604 (Tex.1978); *Taco Cabana, Inc. v. Exxon Corp.,* 5 S.W.3d 773, 778–79 (Tex.App.-San Antonio 1999, pet. denied).

■ To prevail on a negligence or negligence per se claim, a plaintiff must plead and prove that the defendant's negligence was the proximate cause of his injury. *See Leitch v. Hornsby,* 935 S.W.2d 114, 119 (Tex.1996) (negligence); *El Chico Corp.,* 732 S.W.2d at 312 (negligence per se); *Taco Cabana,* 5 S.W.3d at 779 (negligence per se); *Roberts v. Healey,* 991 S.W.2d 873, 878 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (negligence). To establish proximate cause, a plaintiff must prove foreseeability and cause in fact. *See Leitch,* 935 S.W.2d at 119; *Nixon,* 690 S.W.2d at 549; *Missouri Pac. R.R. Co. v. American Statesman,* 552 S.W.2d 99, 103 (Tex.1977); *Roberts,* 991 S.W.2d at 878.

■ To establish foreseeability, the plaintiff must show that the defendant should have anticipated the dangers that its negligent act or omission created for others. *See Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992); *Roberts,* 991 S.W.2d at 878 n. 4; *Hall v. Stephenson,* 919 S.W.2d 454, 466 (Tex.App.—Fort Worth 1996, writ denied). Foreseeability, however, does not require a person to anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence. *See Travis,* 830 S.W.2d at 98; *Roberts,* 991 S.W.2d at 878 n. 4. Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable. *See Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996); *Lofton v. Texas Brine Corp.,* 777 S.W.2d 384, 387 (Tex.1989); *Roberts,* 991 S.W.2d at 878 n. 4. "Although the criminal conduct of a third party may be a superseding cause which relieves the negligent actor from liability, the actor's negligence is not su-

perseded and will not be excused when the criminal conduct is a foreseeable result of such negligence." *Roberts*, 991 S.W.2d at 878 n. 4 (quoting *Travis*, 830 S.W.2d at 98).

The test for cause in fact is whether the negligent act or omission was a substantial factor in bringing about the injury, without which the harm would not have occurred. *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex.1995); *McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 903 (Tex. 1980); *American Statesman*, 552 S.W.2d at 103–04; *Roberts*, 991 S.W.2d at 878; *Hall*, 919 S.W.2d at 466. Cause in fact must be proven by evidence of probative force, and cannot be established by mere conjecture, guess, or speculation. *See Boys Clubs*, 907 S.W.2d at 477; *McClure*, 608 S.W.2d at 903. Cause in fact is not shown if the defendant's negligence did no more than furnish a condition that made the injury possible. *See Boys Clubs*, 907 S.W.2d at 477; *Bell v. Campbell*, 434 S.W.2d 117, 120 (Tex.1968); *Roberts*, 991 S.W.2d at 878. As the supreme court stated in *Carey v. Pure Distrib. Corp.*, 133 Tex. 31, 124 S.W.2d 847, 849 (1939), "[T]he evidence must go further, and show that such negligence was the proximate, and not the remote cause of the resulting injuries ... [and] justify the conclusion that such injury was the natural probable result thereof." In other words, even if the injury would not have occurred but for the negligence, there is no legal cause if the connection between the negligence and the injury is too attenuated or remote. *See Boys Clubs*, 907 S.W.2d at 477; *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 776 (Tex.1995); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 472 (Tex.1991).

While the issue of proximate cause is generally a question of fact, some causes in fact do not constitute legal causation as a matter of law. *See Phan Son Van v. Pena*, 990 S.W.2d 751, 755 (Tex. 1999); *Union Pump*, 898 S.W.2d at 775–76; *Bell v. Campbell*, 434 S.W.2d 117, 122 (Tex.1968); *Schlager v. Clements*, 939

S.W.2d 183, 187 (Tex.App.-Houston [14th Dist.] 1996, writ denied). In other words, proximate cause can be a question of law when the evidence is without material dispute and where only one reasonable inference may be drawn. *See Rodriguez v. Moerbe*, 963 S.W.2d 808, 811 (Tex.App.-San Antonio 1998, pet. denied). It may also be a question of law when the relationship between the plaintiff's injuries and the defendant's negligence is attenuated or remote. *See Boys Clubs*, 907 S.W.2d at 477; *Union Pump*, 898 S.W.2d at 776; *Campbell v. Adventist Health System/Sunbelt, Inc.*, 946 S.W.2d 617, 626 (Tex.App.-Fort Worth 1997, no pet.).

## C. ANALYSIS

In this case, certain facts are undisputed. Monsivaiz stole a nine millimeter handgun from appellee's Katy Freeway store on or before October 7, 1996. Monsivaiz then sold the gun to Santillan. Some time after the sale, Santillan "loaned" the gun to Rangel. Ultimately, the gun ended up in the hands of Guerrero, who used it on October 21, 1996, to murder Alek Ambrosio. Based on these undisputed facts and applying prior decisions analyzing the issue of cause in fact, we hold that appellee's failure to exercise care in the storage and display of its firearms is too remote and attenuated from the criminal conduct of the three car jackers to constitute a legal cause of injury to either Alek Ambrosio or his parents.

As we have stated, at some point in the causal chain, the defendant's conduct may be too remotely connected with the plaintiff's injury to constitute legal causation. *See Boys Clubs*, 907 S.W.2d at 477; *Union Pump*, 898 S.W.2d at 776; *Lear Siegler*, 819 S.W.2d at 472. The supreme court has noted the difficulty of drawing the line where legal causation may exist and where, as a matter of law, it cannot. *See Union Pump*, 898 S.W.2d at 775. In the past, however, the supreme court has drawn that line based on issues of remoteness and attenuation. *See, e.g., Dallas*

*County Mental Health and Mental Retardation v. Bossley,* 968 S.W.2d 339, 343 (Tex.1998), *cert. denied,* 525 U.S. 1017, 119 S.Ct. 541, 142 L.Ed.2d 450 (1998); *Union Pump,* 898 S.W.2d at 775–76; *Lear Siegler,* 819 S.W.2d at 472; *Bell,* 434 S.W.2d at 122. This court has also held that cause in fact did not exist as a matter of law when the defendant's conduct was too remotely connected to the injury. *See Roberts,* 991 S.W.2d at 879.

As early as 1968, the supreme court recognized that certain causes are insufficient to constitute the legal cause of an injury. In *Bell,* two cars collided and a trailer attached to one of the cars disengaged and overturned into the opposite lane. 434 S.W.2d at 119. Three people were attempting to move the trailer when they were struck by another vehicle. *See id.* In holding that the first accident was not the legal cause of the plaintiffs' injuries, the court reasoned that "all acts and omissions charged against respondents had run their course and were complete. Their negligence did not actively contribute in any way to the injuries involved in this suit." *Id.* at 122.

In *Lear Siegler,* Perez, an employee of the Texas Highway Department, was driving a truck pulling a flashing arrow sign behind a highway sweeping operation. 819 S.W.2d at 471. The sign was used to warn traffic of the highway maintenance. *See id.* The sign malfunctioned when wires connecting it to the generator became loose, as they had the day before. *See id.* Perez got out of the truck to reattach the wires. *See id.* As Perez worked, an oncoming vehicle, whose driver was asleep, struck the sign which, in turn, struck and killed Perez. *See id.* Perez's survivors sued the manufacturer of the sign. *See id.*

Based on the facts of the case, the supreme court held the connection between the defendant's conduct, manufacturing a defective sign, was too attenuated to constitute the legal cause of Perez's death. *See id.* at 472. The fact that "but for" the

malfunction, Perez would not have been at the place where the accident occurred, was insufficient to establish cause in fact. *See id.*

In *Union Pump,* a fire occurred at a chemical facility. 898 S.W.2d at 774. The fire was caused by the malfunction of a pump, which had malfunctioned twice before. *See id.* The malfunction caused the pump to catch fire and ignite the surrounding area. *See id.* Allbritton, an employee of the chemical company, was ordered to assist in abating the fire; she did. *See id.*

After the fire was extinguished, another employee, Subia, was instructed to "block in" a nitrogen purge valve. *See id.* Allbritton asked to accompany Subia and was allowed to do so. *See id.* To get to the purge valve, Allbritton climbed over an aboveground pipe rack instead of going around it. *See id.* When they reached the purge valve, they were instructed the repair was no longer necessary. *See id.* Again, Allbritton chose to climb over the pipe rack instead of taking the safer route around it, but this time, she slipped off the pipe rack and injured herself. *See id.* The pipe rack was wet because of the fire and Allbritton was wearing fireman's hip boots and other gear when she fell. *See id.*

Allbritton sued Union Pump alleging the defective pump caused her injuries. *See id.* She claimed that "but for" the pump fire, she would not have walked over the pipe rack, which was wet with water or firefighting foam. *See id.*

In rejecting Allbritton's claim, the supreme court again found the connection between the defendant's conduct, the manufacture of a defective pump, too attenuated to have been the legal cause of the plaintiff's injury. *See id.* at 776. Specifically, the court found that any acts or omissions of the defendant had run their course and were complete. *See id.* (citing *Bell,* 434 S.W.2d at 122). Thus, the defendant's conduct did no more than create the

condition which made the injury possible, which is insufficient for legal cause. *See id.* As the court stated:

> Even if the pump fire were in some sense a "philosophic" or "but for" cause of Allbritton's injuries, the forces generated by the fire had come to rest when she fell off the pipe rack. The fire had been extinguished, and Allbritton was walking away from the scene.

*Id.* at 776.

In both of these cases, the supreme court found a comment to section 431 of the Restatement (Second) of Torts instructive on the issue of legal causation:

> In order to be a legal cause of another's harm, it is not enough that the harm would not have occurred had the actor not been negligent. . . . The negligence must also be a substantial factor in bringing about the plaintiff's harm. The word "substantial" is used to denote the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility, rather than in the so-called "philosophic sense," which includes every one of the great number of events without which any happening would not have occurred.

RESTATEMENT (SECOND) TORTS § 431 cmt. a (1965).

More recently, in reviewing this issue of legal cause in connection with a claim under the Texas Tort Claims Act, the supreme court again found cause in fact absent as a matter of law. In *Bossley,* the plaintiffs alleged that a mental health facility was negligent in failing to prevent a suicidal patient from escaping and committing suicide. 968 S.W.2d at 340–41. According to the plaintiffs, the mental health facility was negligent in unlocking an outer door without determining whether the patient was nearby and for failing to lock an inner door. *See id.* at 343. The court rejected the plaintiffs' claims holding that neither act or omission could be said to

have caused the patient's suicide. *See id.* Citing *Union Pump,* the court held that while the failure to keep the doors locked permitted the patient to escape, it did not cause his death. *See id.*

After the patient escaped, he ran half a mile and then attempted to hitchhike on both sides of the freeway. *See id.* Only when he was about to be apprehended by staff from the facility did he leap in front of an oncoming truck. *See id.* The court reasoned that:

> Although Roger's escape through the unlocked doors was part of a sequence of events that ended in his suicide, the use and condition of the doors were too attenuated from Roger's death to be said to have caused it.

*Id.*

Finally, this court has also recognized that attenuation and remoteness may defeat legal cause as a matter of law. *See Roberts,* 991 S.W.2d at 879. In *Roberts,* a client sued her attorney for, among other things, negligence alleging he failed to obtain a protective order against the client's estranged husband, who killed the client's two small children and wounded her mother. *Id.* at 876. In rejecting the client's claim, this court held that legal cause was not established because the attorney's conduct did nothing more than create the condition (the absence of a protective order) that enabled the estranged husband to kill the client's children and wound her mother. *See id.* at 879. Accordingly, we held the trial court properly granted summary judgment to the attorney because legal cause was negated as a matter of law. *See id.*

In the case before us, appellee's conduct (failing to exercise care in the storage and display of its firearms) did nothing more than create the condition that enabled Monsivaiz to steal the gun. The forces generated by appellee's failure to safely maintain its guns had come to rest long before Guerrero murdered Alek Ambrosio. The crime in which the gun was used

occurred at least two weeks after the gun was stolen, occurred in a different county, and was committed by someone other than the original thief. From the time the gun was stolen, the gun changed hands at least four times. To suggest that if Monsivaiz had not been able to steal the gun, Guerrero would not have ended up with it and would not have murdered Alek Ambrosio is nothing more than causation in the "philosophic sense," which has been rejected as insufficient to establish legal cause. Indeed, appellants failed to provide summary judgment proof raising a fact issue as to how appellee's failure to safely maintain its guns was a substantial factor in bringing about the injury which would not otherwise have occurred.

■ While there may be a fact question as to foreseeability because appellee was aware that its guns were susceptible to theft, that guns had been stolen from its stores over the years, and that one of its stolen guns was used in another murder, it is immaterial here in the absence of legal cause, i.e., cause in fact. See id. at 879–80. Absent a fact issue as to cause in fact, an essential part of the proximate cause element of negligence and negligence per se, claims based on negligence and negligence per se cannot stand.

Accordingly, we hold the trial court properly granted summary judgment on appellants' negligence and negligence per se claims because legal cause was negated as a matter of law. We overrule appellants' first point of error.

## IV. POINT OF ERROR TWO

In their second point of error, appellants contend the trial court erred in sustaining appellee's objection to government reports and affidavit testimony of appellants' expert witnesses. In support of their response to appellee's motion for summary judgment, appellants attempted to introduce (1) records and reports from the Bureau of Alcohol, Tobacco and Firearms and the United States General Accounting Office, and (2) the affidavits of two experts,

Liberty Police Department Chief Billy R. Tidwell and David Salmon, a licensed peace officer, certified protection officer, licensed security consultant, and certified law enforcement firearms instructor.

We have reviewed the evidence, which the trial court refused to consider, and find that it does not raise a material issue of fact on the element of cause in fact. Based on this finding and our disposition of point of error one, we hold that any error by the trial court in sustaining appellee's objection to this evidence does not entitle appellants to a reversal of the summary judgment. See Science Spectrum, 941 S.W.2d at 911; City of Houston, 589 S.W.2d at 678; Huckabee, 995 S.W.2d at 155. Thus, we overrule appellants' second point of error.

## V. POINT OF ERROR THREE

■ In point of error three, appellants contend the trial court erred in denying their motion for continuance. Appellants sought a three-month continuance until after the criminal trial so that they could (1) examine the records of Fort Bend County Sheriff's Office pertaining to the criminal investigation; (2) take the depositions of officers of the Fort Bend County Sheriff's Department, including Brad Wichard, the officer investigating their son's murder; (3) obtain the assistance of the Fort Bend County Prosecutor, Bertram Isaacs; and (4) perhaps obtain testimony from the men involved in their son's murder. Appellants argue this evidence would have assisted them in negating appellee's motion for summary judgment "by showing the circumstances of the theft, that is, the Third Party Defendants' [the criminal defendants'] statement to the investigating officers about their knowledge of Carter's lax security and other matters." They also argue that examination of this information would have produced additional details regarding the theft of guns from appellee's store in general, appellee's knowledge of the same, and how the gun was stolen and came into the hands of the shooter.

Based on the undisputed facts of this case, the case law relevant to cause in fact,

and our holding regarding the lack of legal cause in this case, we find that any information appellants might have discovered after the criminal trial would not have been sufficient to raise a fact issue on the element of legal cause. No matter what appellants may have discovered about appellee's lax security, appellee's knowledge of its lax security, or how the gun ultimately came to be in the hands of Guerrero in the early morning hours of October 21, 1996, it would not change the undisputed facts which establish as a matter of law that there is no cause in fact present in this case. Nothing appellants might have discovered could change the fact that appellee's lax security merely created the condition that allowed Monsivaiz to steal the handgun, and that such condition was not, as a matter of law, the cause in fact of the murder because: (1) the murder occurred at least two weeks after the gun was stolen from appellee's store; (2) the murder occurred miles away from appellee's store, in another county (Fort Bend); (3) the gun changed hands at least four times after it was stolen; and (4) the man who shot appellants' son was not the man who stole the gun from appellee's store. *See Bell*, 434 S.W.2d at 122.

Thus, we hold the trial court did not abuse its discretion in denying appellants' motion for continuance and we overrule their third point of error.

## VI. POINT OF ERROR FOUR

In their fourth and final point of error, appellants claim the trial court erred in overruling their motion for new trial. The motion for new trial was based on appellants' contention that appellee was not entitled to summary judgment. Given our holding that the trial court properly granted summary judgment in favor of appellee, this point of error is without merit. We overrule appellants' fourth point of error.

## VII. CROSS–POINTS

Appellee has brought four cross-points in which they argue the summary judgment can be upheld on the alternate basis of the no evidence motion for summary judgment it filed pursuant to rule 166a(i) of the Texas Rules of Civil Procedure. Because we have determined the trial court correctly granted appellee's traditional motion for summary judgment, we need not reach appellee's cross-points.

## VIII. CONCLUSION

In summary, we hold the trial court properly granted summary judgment for appellee because it disproved the element of proximate cause, specifically cause in fact, as a matter of law. We overrule appellants' points of error one through four and affirm the trial court's judgment.