**Opinion issued August 1, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-01073-CV

————————————

**SINUE AND SANDRA MIRANDA, INDIVIDUALLY AND AS NEXT FRIEND OF JESSE MIRANDA, Appellants**

**V.**

**TRISTAR CONVENIENCE STORES, INC., Appellee**

On Appeal from the 129th District Court
Harris County, Texas
Trial Court Case No. 2008-00151

## MEMORANDUM OPINION

Appellants, Sinue and Sandra Miranda, individually and as the next friend of Jesse Miranda ("Miranda"), sued appellee, TriStar Convenience Stores, Inc. ("TriStar"), and other entities for injuries Sinue sustained during an armed robbery

at the convenience store where he worked.[1]  The trial court granted summary judgment in favor of TriStar, dismissing Miranda's claims.  In three issues, Miranda argues that the trial court erred in granting TriStar's motion for summary judgment because: (1) the evidence showed illegal gambling was taking place at the convenience store; (2) TriStar had control of the premises, both actually and contractually; and (3) the evidence most favorable to Miranda indicates that TriStar was negligent in failing to exercise its right to control the premises.

We affirm.

## Background

On April 27, 2007, an unidentified gunman robbed the Handi Plus #17, a Shell convenience store and gas station, and shot Sinue Miranda, a clerk at the store, in the process.  Miranda was behind the bulletproof glass surrounding the clerk's station, but he had left the customer window open.  The gunman ran into the store, sprayed Miranda with pepper spray, shot him through the open customer window, and stole cash from behind the counter.  Miranda was left paralyzed from the waist down.

---

[1]  Miranda also sued Bhanu, LLC, Motiva Enterprises, LLC, and Gulshan Enterprises.  Prior to the trial court's summary judgment, these companies settled the Mirandas' claims against them and were dismissed from the suit.

The Handi Plus #17 is owned by Global New Millennium Partners ("Global"),[2] which leased the Property to TriStar. TriStar is a subsidiary of Gulshan Enterprises, Inc. ("Gulshan"), a wholesale distributor of gas and diesel fuel. Gulshan, but not TriStar, had a contract with Motiva Enterprises, LLC ("Motiva"), a gasoline supplier, which provided that Gulshan could use the "Shell" brand name as long as it complied with the terms of the agreement. Gulshan's Marketer Agreement with Motiva provided that the "[Gulshan's] Outlets may not be used for any unlawful, offensive, hazardous, unsightly, or other objectionable purpose"; it required Gulshan and its operators to comply with "all Laws"; it further required that the outlets be operated in a "secure manner" so that criminal activity is deterred and people are "adequately protected from injury, harm or loss"; and it provided that Motiva had the right to inspect the outlets to ensure compliance with the terms of the Marketer Agreement.

TriStar subleased the Handi Plus to Bhanu, LLC "for the purposes of operating a convenience store business involving the sale of motor fuel." TriStar purchased wholesale fuel from Gulshan and, in turn, consigned the fuel products to Bhanu. Bhanu retained a commission on the sales of the fuel and paid the net proceeds to TriStar.

---

[2] Global New Millennium Partners, the property owner, was never a party to the lawsuit below. Global's CEO is Shoukat Dhanani, the president of Gulshan and TriStar.

3

TriStar and Bhanu entered into a Sublease Agreement that gave Bhanu the right to possession of the premises. TriStar had the contractual right "to enter the Premises, to make inspections, provide necessary services, or show the unit to prospective buyers, mortgagees, Sublessees or workmen." Bhanu was required to "conduct [its] business in a professional and in a business-like manner and not engage in any dishonest, unethical, or fraudulent practice" and to "conduct all operations lawfully and in strict compliance with all statutes and all ordinances, regulations, and other requirements of governmental authorities." Bhanu was also forbidden "to install, or cause to be installed, any vending equipment, coin operated or otherwise, or any type of revenue generating machine or equipment on the premises." TriStar retained the right to terminate the Sublease Agreement if Bhanu failed to abide by these provisions.

Sinue Miranda testified in his deposition that the Handi Plus #17 had gambling machines, also known as "eight-liners," and that he had been instructed by a person named Raj to pay customers who won with money kept under the register for that purpose. He stated that Raj left money every week to pay winners on the gambling machines and that the robber took the money that Raj had left for that purpose. Somaiah Kurre, a manager for Bhanu, also testified that the Handi Plus #17 had approximately seven gambling machines, or "eight-liners," that were owned by a third party, HNC Amusements, Inc.

4

Another Bhanu manager, William Nores, averred that a Gulshan employee, Zafer Tahir, conducted inspections of the store premises and had to have seen the gambling machines because they were open and obvious. Nores also stated that, on the day of the shooting, Raj Kothakonda had just arrived to make sure there was enough cash to pay the winners of the gambling machines when the robbery occurred.

Kothakonda was the prior operator of the Handi Plus #17 who sold his inventory to Bhanu before Bhanu entered into the Sublease Agreement with TriStar. Kothakonda still participated in managing stores for Bhanu in some capacity. He stated that the gambling machines were added by a vendor he identified as "HNC." He testified that he was not involved with the gambling machines in any way, but he did make deposits for the store. The manager would ready the cash to be deposited and leave it for him wrapped in a brown paper bag with a deposit amount written on it. On the day of the shooting, Kothakonda had arrived at the store to pick up the cash deposit "[n]ot even a minute" before the gunman entered the store. The shooter took the cash from under the counter, but did not attempt to open the cash register.

Zafer Tahir, a Gulshan employee, inspected the Handi Plus. He admitted that he had inspected the store prior to the shooting and knew the gambling machines were present. He stated that he never inquired into how the winners on

5

the machines were paid because he only inspected the stores for certain items on his instruction sheet. He stated that he was aware that it would have been illegal for the winners to be paid in cash and that, if he had been aware of any cash payments or other criminal activity, he would have reported it to the store operator or to Shoukat Dhanani, the president of both Gulshan and TriStar.

Dhanani provided affidavit testimony that "TriStar does not exercise control over the operation of the store or its security." He also averred that "TriStar does not own, operate, possess, use, or control the Property," that it "has no employees working or performing operations on the Property," and that it "is not involved in the day-to-day operations of the Property." Dhanani stated that he had no personal knowledge of any other criminal acts that might have occurred on or near the Property. He also averred that he was not aware of the existence of the gambling machines and that he would have terminated the Sublease Agreement with Bhanu if he had known that gambling was taking place in the convenience store.

Somaiah Kurre, a Bhanu employee and the store manager, testified that TriStar provided gas to the store and periodically conducted a walk-through of the store. Kurre stated that there were approximately six or seven video gambling machines that "people come and play. And in return, they have to redeem for some merchandise."

6

Regarding previous crime at Bhanu stores, he stated that none of the stores had ever been robbed during the time that he worked for Bhanu. He explained that there had been "several incidents like taking beer, run out, those kinds of things, but never got robbed." The robbery of the Handi Plus #17 was the first robbery that he could remember.

Miranda also presented the testimony of a security expert, Harold Warren, who opined that TriStar retained the right to regulate all types of machines that generated income at the Handi Plus; TriStar had a duty to ensure that the Handi Plus was not used for illegal purposes and to maintain security on the premises; TriStar inspected the Handi Plus and either knew or should have known that illegal gambling was taking place; the presence of the gambling machines increased the likelihood of violent crime by attracting criminals to the premises and made the shooting foreseeable; the timing of the shooting—occurring right after Kothakonda arrived to replenish the cash used to pay the winners—shows a relationship between the gambling and the criminal activity; and TriStar acted unreasonably in permitting illegal gambling.

Miranda sued Bhanu, Motiva, Gulshan, and TriStar for negligence and other causes of action relating to the shooting. Bhanu, Motiva, and Gulshan all settled their claims and were dismissed from the suit prior to summary judgment. Miranda proceeded with three causes of action against TriStar: premises liability,

negligent activity, and negligence per se. He argued that, as the sublessor, TriStar was "contractually obligated through its agreements with Global Millennium Partners and Gulshan Enterprises, Inc., which was in turn obligated to Motiva, to make sure that there were no unlawful activities taking place on the premises and to also look out for the safety of the people lawfully using the premises." Miranda argued that TriStar carried out inspections through Gulshan employee Zafer Tahir, who testified that he was aware of the gambling machines. He also cited the testimony of William Nores, a manager for Bhanu, who testified about the presence of the "eight liners" in four of the stores where he worked, including Handi Plus #17.

TriStar moved for summary judgment on all of Miranda's claims on both no-evidence and traditional grounds. It argued that it could not be held liable for Miranda's injuries "when the occurrence in question, as well as the damages complained of, were proximately caused or producingly caused, in whole or in part, by the acts, omissions, fault, negligence, or other conduct of the assailant over whom Defendants have no right of control." TriStar further argued that it "is nothing more than a consigner-distributor of fuel to the Property and had no practical or contractual involvement in or responsibility over the substantive operations or security of the Property." TriStar "denied the gambling allegations"

and asserted that the statutory basis of the gambling claim—Penal Code chapter 47—is not one for which tort liability may be imposed.

The trial court granted summary judgment in favor of TriStar on all of Miranda's claims. This appeal followed.

## Standard of Review

An appellate court reviews de novo the trial court's ruling on a summary judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When the trial court does not specify the grounds for its grant of summary judgment, the reviewing court must affirm the summary judgment if any of the theories presented to the court and preserved for appeal are meritorious. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

A proper no-evidence summary judgment must be affirmed when the record shows one of the following: (1) there is no evidence on the challenged element; (2) the evidence offered to prove the challenged element is no more than a scintilla; (3) the evidence establishes the opposite of the challenged element; or (4) the court is barred by law or the rules of evidence from considering the only evidence offered to prove the challenged element. *City of Keller v. Wilson*, 168 S.W.3d 802, 810, 823 (Tex. 2005) ("[T]he test for legal sufficiency should be the same for summary judgments, directed verdicts, judgments notwithstanding the

verdict, and appellate no-evidence review."). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).

To prevail on a traditional summary judgment motion, the movant must establish that "there is no genuine issue as to any material fact" and that it "is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." TEX. R. CIV. P. 166a(c); *see Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). When a defendant moves for traditional summary judgment, it must either: (1) disprove at least one essential element of the plaintiff's cause of action, or (2) plead and conclusively establish each essential element of its affirmative defense, thereby defeating the plaintiff's cause of action. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam). If the movant meets its burden, the burden then shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Sw.*

10

*Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002) (citing *Sci. Spectrum,*

*Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997)).

**Analysis**

Miranda alleged causes of action for premises liability and negligent activity

against TriStar, arguing that the illegal gambling occurring on the premises created

a dangerous condition that attracted criminal misconduct and made such conduct

an unreasonable and foreseeable risk of harm to invitees, or, alternatively, that

TriStar's failure to terminate the lease was negligent conduct that caused

Miranda's injury by allowing the illegal gambling to continue. Miranda also

alleged a cause of action against TriStar for negligence per se based on Penal Code

section 47.04,[3] addressing illegal gambling, and on Civil Practice and Remedies

---

[3]    Penal Code section 47.04, "Keeping a Gambling Place," provides that:

> a person commits an offense if he knowingly uses or permits another to use as a gambling place any real estate, building, room, tent, vehicle, boat, or other property whatsoever owned by him or under his control, or rents or lets any such property with a view or expectation that it be so used.

TEX. PENAL CODE ANN. § 47.04 (Vernon 2011). Penal Code section 47.01 defines "gambling place" as any property, "one of the uses of which is the . . . playing of gambling devices." *Id.* § 47.01(3) (Vernon 2011). "Gambling device" means "any electronic, electromechanical, or mechanical contrivance not excluded under Paragraph (B) that for a consideration affords the player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance." *Id.* § 47.01(4).

11

Code section 125.004,[4] providing that a person who maintains a place in which people habitually go to gamble has created a common nuisance. Miranda argues that, to be entitled to summary judgment dismissing this claim, "TriStar would need to show that as a matter of law that a violation of Chapter 47 [of the Texas Penal Code] does not give rise to tort liability."

TriStar argued, among other things, in its summary judgment motion and on appeal, that it could not be held liable for Miranda's injuries when the "occurrence and damages complained of were proximately caused or producingly caused by the acts, omissions, fault, negligence, or other conduct of the assailant" over whom it had no right of control. It also argued that it was only a consignor or distributor of fuel to the Property and had no involvement in the substantive operation of the Property. TriStar further argued that tort liability could not be imposed for a violation of Penal Code chapter 47 and that Miranda could not provide any admissible evidence to establish that TriStar's alleged violations of either Penal

---

[4]      Civil Practice and Remedies Code section 125.0015, "Common Nuisance," provides:

> [A] person who maintains a place to which persons habitually go [for the purpose of gambling, gambling promotion, or communicating gambling information as prohibited by the Penal Code] and who knowingly tolerates the activity and furthermore fails to make reasonable attempts to abate the activity maintains a common nuisance.

TEX. CIV. PRAC. & REM. CODE ANN. § 125.0015(a)(5) (Vernon Supp. 2012).

12

Code chapter 47 or of Civil Practice and Remedies Code chapter 125 was the proximate cause of Miranda's injuries. We address these causes of action together.

Texas courts have recognized both negligent-activity and premises-defect theories of liability against the owners or controllers of land. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 775 (Tex. 2010). Generally, a premises owner or controller is liable for a premises defect if its past negligent conduct created an unreasonably dangerous condition on the premises that causes the plaintiff's injury, and it is liable for negligent activity if its contemporaneous negligent conduct causes the plaintiff's injury. *See, e.g.*, *id.*; *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998). The Texas Supreme Court has "repeatedly treated cases involving claims of inadequate security as premises-liability cases." *Del Lago Partners*, 307 S.W.3d at 776; *see also Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655 & n.3 (Tex. 1999) (plurality opinion) (discussing applicability of premises liability cases to allegations of inadequate security); *Timberwalk Apartments*, 972 S.W.2d at 753 (holding, in inadequate security case, that jury was properly charged under premises-liability theory rather than negligent-activity theory). "In a premises-liability case, the plaintiff must establish a duty owed to the plaintiff, breach of the duty, and damages proximately caused by the breach." *Del Lago Partners*, 307 S.W.3d at 767.

13

Negligence per se is a common-law doctrine that allows courts to rely on a penal statute to define a reasonably prudent person's standard of care. *Reeder v. Daniel*, 61 S.W.3d 359, 361–62 (Tex. 2001). To establish negligence per se, a plaintiff must prove that: (1) the defendant's act or omission is in violation of a statute or ordinance; (2) the injured person was within the class of persons which the ordinance was designed to protect; and (3) the defendant's act or omission proximately caused the injury. *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 265 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (citing *El Chico Corp. v. Poole*, 732 S.W.2d 306, 312 (Tex. 1987) and *Nixon v. Mr. Prop. Mgm't Co.*, 690 S.W.2d 546, 549 (Tex. 1985)).

Thus, all three causes of action that Miranda alleged against TriStar require it to establish the existence of a duty that TriStar breached and that the breach proximately caused Miranda's injury. *See Del Lago Partners*, 307 S.W.3d at 767; *see also Taylor v. Louis*, 349 S.W.3d 729, 738 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (providing that duty, breach, and proximate cause are elements of negligent activity claims just as they are elements of premises defect claim); *Ambrosio*, 20 S.W.3d at 265 (providing that proximate cause is element of negligence per se claim).

To establish proximate cause, a plaintiff must prove both (1) foreseeability and (2) cause in fact. *Ambrosio*, 20 S.W.3d at 265; *see LMB, Ltd. v. Moreno*, 201

14

S.W.3d 686, 688 (Tex. 2006) (holding that proximate cause has two components: cause-in-fact and foreseeability). "These elements cannot be established by mere conjecture, guess, or speculation." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005).

The test for cause-in-fact is whether the negligent act or omission was a substantial factor in bringing about the injury, without which the harm would not have occurred. *Id.*; *Ambrosio*, 20 S.W.3d at 266 (citing *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)). Cause-in-fact is not shown if the defendant's negligence did no more than furnish a condition that made the injury possible. *Urena*, 162 S.W.3d at 551; *Ambrosio*, 20 S.W.3d at 266. In other words, even if the injury would not have occurred but for the defendant's negligence, "the conduct of the defendant may be too attenuated from the resulting injuries to the plaintiff to be a substantial factor in bringing about the harm." *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 799 (Tex. 2004); *Ambrosio*, 20 S.W.3d at 266 ("[T]here is no legal cause if the connection between the negligence and the injury is too attenuated or remote."). While the issue of proximate cause is generally a question of fact, it can be a question of law when the evidence is without material dispute or when the relationship between the plaintiff's injuries and the defendant's negligence is attenuated or remote. *Ambrosio*, 20 S.W.3d at 266.

15

Foreseeability means the actor should anticipate the dangers a person of ordinary intelligence would anticipate. *Nixon*, 690 S.W.2d at 549–50. Generally, third-party criminal conduct is a superseding cause of damages unless the criminal conduct is a foreseeable consequence of the party's actions. *Id.* at 550. With regard to the criminal acts of third parties, courts consider not only whether the danger was foreseeable, but also whether it was foreseeable that the danger would harm a particular plaintiff or one similarly situated. *See Taylor*, 349 S.W.3d at 734. In determining whether criminal conduct is foreseeable, we must consider whether any criminal conduct previously occurred on or near the property, how recently the criminal conduct occurred, how often it occurred, how similar it was to the conduct at issue, and what publicity was given to the previous conduct to indicate that the premises owner knew or should have known about it. *Timberwalk Apartments*, 972 S.W.2d at 757; *Durham v. Zarcades*, 270 S.W.3d 708, 719 (Tex. App.—Fort Worth 2008, no pet.). "These factors—proximity, recency, frequency, similarity, and publicity—must be considered together in determining whether criminal conduct was foreseeable. . . . The court must weigh the evidence using all the factors." *Timberwalk Apartments*, 972 S.W.2d at 759; *Durham*, 270 S.W.3d at 719; *see Trammell Crow Cent. Tex., Ltd. v. Gutierrez*, 267 S.W.3d 9, 15 (Tex. 2008).

Here, even assuming, as Miranda argues, that he was TriStar's invitee, that TriStar retained control over the premises, that TriStar owed him a duty not to maintain a nuisance by allowing gambling machines to remain on the premises, and that TriStar breached its duty by failing to terminate Bhanu's lease, Miranda has not presented evidence raising a genuine issue of material fact on the issues of foreseeability of Miranda's injury as a result of TriStar's failure to terminate Bhanu's lease or the failure to terminate the lease as the cause-in-fact of Miranda's injury. The relationship between TriStar's allegedly negligent failure to terminate the Sublease Agreement and the criminal actions of the third-party shooter is too attenuated or remote to establish either foreseeability or cause-in-fact. TriStar's conduct—failing to terminate the Sublease Agreement based on the alleged illegal gambling—did nothing more, at most, than create the condition that enabled Bhanu to maintain the revenue-producing gambling machines in the Handi Plus #17, which in turn allegedly attracted the third-party shooter to commit an armed robbery. *See Ambrosio*, 20 S.W.3d at 266 (holding sporting goods store not liable under negligence per se theory when gun stolen from store was eventually used by third party in carjacking and murder because "appellee's failure to exercise care in the storage and display of its firearms is too remote and attenuated from the criminal conduct of the three carjackers to constitute a legal cause of injury to either [the victim] or his parents").

Furthermore, the record contains no evidence of violent crimes that occurred at or near the Handi Plus #17 prior to the robbery on April 27, 2007. Many people, including Miranda himself, testified that they had no knowledge of any previous robberies or use of weapons in the store. Kurre testified generally that there had been instances of shoplifting, and Miranda testified that he had been involved in a previous altercation with a yelling customer, but neither knew of any crimes similar to the shooting. Even assuming, as Miranda alleged, that TriStar knew or had reason to know that illegal gambling machines were being used on the premises, this knowledge alone was not enough to make a violent robbery and shooting foreseeable. The gambling could not serve to inform TriStar's knowledge of "[t]he nature and character of the premises" or the "mode of doing business" in a way that would make the armed robbery foreseeable to TriStar. *See Del Lago Partners*, 307 S.W.3d at 768–69. Nor is illegal gambling conducted on eight-liner gambling machines sufficiently similar to the April 27, 2007 armed robbery to put TriStar on notice of the potential for such criminal activity. *See Trammell Crow*, 267 S.W.3d at 13, 17 (holding that "repeated occurrences of theft, vandalism, and simple assaults . . . do not suggest the likelihood of murder" and further holding that even evidence of ten previous violent crimes were not "sufficiently frequent and similar [to the crime of murder] to give rise to a duty in this case").

In his affidavit, Harold Warren, Miranda's security expert, made the conclusory statement that the presence of illegal gambling "greatly increased the likelihood of violent crime occurring on the premises," but he did not address any specific occurrence of crimes in and around the Handi Plus #17 prior to the April 27, 2007 shooting. He did not discuss any evidence that the allegedly illegal gambling at the Handi Plus #17 had attracted additional crime. Warren admitted that he had not compared data of criminal activity at illegal gambling establishments with criminal activity in the general population to determine if the presence of gambling generally increased the likelihood of violent crimes occurring, and he did not produce any research or other evidence of a connection between gambling machines and increased incidents of violent crime.

Thus, Miranda failed to produce more than a scintilla of evidence as to either prong of the essential element of proximate cause. He failed to show that TriStar's alleged negligence was the cause-in-fact of his injuries, and he also failed to produce more than a scintilla of evidence as to the foreseeability of the third-party shooter's criminal conduct. *See LMB Ltd.*, 201 S.W.3d at 688; *Urena*, 162 S.W.3d at 551.

We conclude that the trial court did not err in granting summary judgment, and we overrule Miranda's issues.

19

## Conclusion

We affirm the judgment of the trial court.

                                        Evelyn V. Keyes
                                        Justice

Panel consists of Justices Keyes, Sharp, and Huddle.