Karin M. ROBERTS, et al., Appellants,

v.

James Sean HEALEY and James Sean Healey, P.C., Appellees.

No. 14–96–01306–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 11, 1999.

Rehearing Overruled April 8, 1999.

Andrew C. Schirrmeister of Houston, TX, for appellants.

Greg K. Winslett of Dallas, TX, James K. Peden, III of Dallas, TX, for appellees.

Panel consists of Justices LEE, ANDERSON and O'NEILL.

## OPINION

ANDERSON, J.

This is an appeal from a summary judgment in a suit for damages arising from an attorney's failure to obtain a protective order against his client's estranged husband, resulting in the death of his client's two small children and injury to her mother. Appellants, Karin M. and Majorie Roberts, sued James Sean Healey and James Sean Healey, P.C. (Healey) for negligence, gross negligence, breach of contract, breach of warranty, and Deceptive Trade Practices Act (DTPA) violations. From the trial court's granting of summary judgment for appellees on all causes of action, appellants bring a single point of error asserting the trial court erred in granting summary judgment. We affirm in part and reverse and remand in part.

### Facts

Karin Roberts married Daniel Charles Kennedy on July 6, 1991, and they had two children, Ashli Patriciamae, born on December 10, 1991, and Alexis Marie, born on March 20, 1994. During the marriage, Kennedy developed a drug habit and became increasingly unstable. By September 1994, Kennedy's behavior had become so erratic that Karin asked him to move out of their mobile home. On October 11, 1994, Karin contacted Healey's office to discuss representation in a divorce and scheduled an appointment for October 13.

Kennedy made harassing telephone calls and pages to Karin, including several threats which she relayed to Healey. Karin also told Healey about Kennedy's drug use. At Healey's request, Karin prepared a narrative outlining Kennedy's violent history to be used in obtaining a temporary restraining order. Healey converted the outline into an affidavit, which Karin later signed. Healey then filed an application for a restraining order with the original divorce petition, but never made any effort to obtain a signed protective order despite repeated calls from Karin and her mother, Marjorie Roberts.[1]

---

1. Ex parte orders are delivered by sheriff or constable or in open court. *See* TEX.FAM.CODE ANN. § 71.17 (Vernon 1994) (subsequently recodified as § 85.041). In October 1994, under Section 71.16 of the Texas Family Code, all protective orders, including temporary ex parte orders, were required to contain the following warning:

 "A PERSON WHO VIOLATES THIS ORDER MAY BE PUNISHED FOR CONTEMPT OF COURT BY A FINE OF AS MUCH AS $500 OR BY CONFINEMENT IN JAIL FOR AS LONG AS SIX MONTHS, OR BOTH."

 All protective orders, except ex parte temporary orders, include the following additional language:

 "A VIOLATION OF THIS ORDER BY COMMISSION OF AN ACT PROHIBITED BY THE ORDER IS A FELONY PUNISHABLE BY A FINE OF AS MUCH AS $10,000 OR CONFINEMENT IN PRISON FOR AS

Because of Kennedy's behavior, Karin moved to a new apartment with her daughters. On one occasion, she called the police and asked that they keep Kennedy from following her because she was afraid Kennedy would locate her new apartment.

On November 1, 1994, Kennedy attempted to commit suicide, which Karin reported to Healey. Kennedy was admitted to a psychiatric ward, but checked out two days later. A few days later, Kennedy left a note on the door of Karin's apartment. Fearful that Kennedy had learned where she lived, Karin immediately took the note to Healey's office and gave it to his secretary.

On November 16, 1994, Kennedy, while high on cocaine, confronted Karin in the parking lot outside her apartment as she was leaving for work. Kennedy forced Karin to accompany him to the apartment, where he broke in and shot and killed his two children. He also shot and wounded his mother-in-law, Marjorie, and then committed suicide.

Appellants then filed this suit, contending Healey's failure to obtain a protective order constituted negligence, breach of contract or warranty, and breach of statutory duties under the DTPA, all of which caused the deaths of the two children, the wounding of Marjorie, and the resulting damages.[2] The trial court granted Hea-

LONG AS 10 YEARS, OR BOTH. FURTHER VIOLATIONS OF THIS ORDER MAY BE PUNISHABLE BY CONFINEMENT IN PRISON FOR AS LONG AS 99 YEARS."
Tex Fam.Code Ann. § 71.16(b) (Vernon 1994) (subsequently recodified as § 85.026).

2. Karin sued in her individual capacity and as representative of the estates of her daughters, Alexis Marie Kennedy and Ashli Patriciamae Kennedy. Majorie sued as the natural mother of Karin M. Roberts and as the grandmother of Alexis and Ashli.

3. While we recognize that the legislature has attempted to protect victims of family violence through numerous laws, we do not find these laws create a basis for liability in a situation such as this. *See* Steve Russell, *The Futility of Eloquence: Selected Texas Family*

ley's motion for summary judgment on all causes of action, and this appeal resulted.

## Standard of Review

In reviewing a summary judgment, we indulge every reasonable inference in the non-movant's favor and take the evidence favorable to the non-movant as true. *See Nixon v. Mr. Property Management Co. .*, 690 S.W.2d 546, 548–49 (Tex.1985). Summary judgment for the defendant is proper if the proof shows there is no genuine issue of material fact as to one or more of the essential elements of the plaintiff's cause of action. *See Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex. 1990); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). When the trial court does not specify the grounds for granting summary judgment, as here, we will affirm the judgment if any one of the theories advanced in the motion are meritorious. *See State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993).

## Causation

Healey moved for summary judgment on the basis that he disproved one element of all of appellants' claims, causation, as a matter of law. Healey argued that his failure to obtain a protective order against Kennedy was not, as a matter of law, the proximate or producing cause of appellants' injuries.[3]

*Violence Legislation 1979–1991*, 33 S.Tex. L.Rev. 353, 356–66 (1992) (discussing the Texas Legislature's initial and continual enactment of legislative protection for potential victims of family violence including a subsection devoted entirely to protective orders). In fact, in a legislative statement, the Texas Legislature affirmatively announced that "[f]amily violence is a serious danger and threat to society and its members. Victims of family violence are entitled to the maximum protection from harm or abuse or the threat of harm or abuse as is permitted by the law." Tex. Code Crim.Proc.Ann. art. 5.01(a) (Vernon Supp.1994). Thereafter, the Texas Legislature enacted several legislative methods of protecting individuals from family violence, including the protective order, giving great latitude to both the judiciary and law enforcement to ensure those seeking safety from fam-

The elements of a negligence cause of action are duty, breach of that duty, and damages proximately caused by the breach of duty. *See Doe v. Boys Clubs of Greater Dallas,* Inc., 907 S.W.2d 472, 477 (Tex.1995). Proximate cause consists of cause in fact and foreseeability. *See id.* at 477; *Travis v. City of Mesquite,* 830 S.W.2d 94, 98 (Tex.1992). The elements of a DTPA action are: (1) the plaintiff is a consumer, (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages. *See Doe,* 907 S.W.2d at 478. A producing cause is "an efficient, exciting, or contributing cause, which in a natural sequence, produced injuries or damages complained of, if any." *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex.1995). Producing cause lacks the "foreseeability" element that is contemplated in the proximate cause standard. *See Wheaton Van Lines, Inc. v. Mason,* 925 S.W.2d 722, 728 (Tex.App.—Fort Worth 1996, writ denied).

Cause in fact is a common element to both negligence and DTPA actions. The test for cause in fact is whether the defendant's act or omission was a substantial factor in bringing about the injury which would not otherwise have occurred. *See Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.,* 896 S.W.2d 156, 161 (Tex.1995). Generally, the issue of proximate cause tends to be a fact question, although some causes in fact do not constitute legal causation as a matter of law. *See Union Pump,* 898 S.W.2d at 775–76.

A plaintiff must plead and prove that the defendant's negligence is the proximate cause of his injury. *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996). Proximate cause consists of cause in fact and foreseeability.[4] *See Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 477 (Tex.1995). "These elements cannot be established by mere conjecture, guess, or speculation." *Id.* Cause in fact does not exist if the defendant's negligence does no more than furnish a condition which made the injury possible. *Union Pump,* 898 S.W.2d at 776. The test for cause in fact is whether the negligent "act or omission was a substantial factor in bringing about injury," without which the harm would not have occurred. *Doe,* 907 S.W.2d at 477. However, any act of negligence that does no more than put a person in a particular place at a particular time is too remote to constitute legal cause. *See Lear Siegler,*

---

ily violence through a protective order are actually protected. All magistrates have a duty to direct a peace officer to use any lawful means to prevent injury to another person when he hears, in any manner, a threat has been made to another. *See* Tex.Code Crim. Proc.Ann. art. 6.01 (Vernon Supp.1994). Also, a person violating a protective order is subject to immediate arrest, without an arrest warrant, and prosecution. *See* Tex.Penal Code Ann. § 25.07 (Vernon 1994); Tex.Code Crim. Proc.Ann. art. 14.03(b) (Vernon Supp.1994) (requiring officer to arrest without warrant if protective order is violated in presence of peace officer); *see also* Tex.Code Crim.Proc. Ann. art. 5.04(a)–(c) (Vernon Supp.1994) (stating that the primary duties of a peace officer investigating family violence is to protect potential victims by enforcing protective orders through arrest and assisting all victims in finding shelter and appropriate community services).

4. Kennedy's criminal conduct does not necessarily interrupt the causal chain when such conduct is foreseeable. "Although the criminal conduct of a third party may be a superseding cause which relieves the negligent actor from liability, the actor's negligence is not superseded and will not be excused when the criminal conduct is a foreseeable result of such negligence" *Travis,* 830 S.W.2d at 98. "Foreseeability requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission." *See Donnell,* 920 S.W.2d at 383. Foreseeability, however, does not require a person to anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence. *See Travis,* 830 S.W.2d at 98. Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable. *See Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996); *Lofton v. Texas Brine Corp.,* 777 S.W.2d 384, 387 (Tex. 1989).

*Inc.*, 819 S.W.2d at 472 (holding the "happenstance" of place and time were too attenuated from the defendant's conduct to constitute legal cause when a highway worker was killed when he was hit by a car after he stopped his street sweeper to check on a malfunctioning flashing arrow sign); *cf. Doe*, 907 S.W.2d at 477–78 (holding that any breach of the Boys Club's duty to investigate its volunteers was not the cause in fact of the plaintiffs' injuries because even if the club had investigated the volunteer's criminal record, revelation of the two misdemeanor DWI convictions would not have precluded his presence at the club so that he could not sexually molest boys he met at the club).

In his motion for summary judgment, Healey argued that even if he had obtained a protective order Kennedy would nevertheless have killed his daughters and shot Marjorie. Therefore, Healey contends his failure to actually obtain a protective order did not cause the injuries, and that even if a protective order had been entered, it would not have deterred Kennedy. As proof, he attached to his summary judgment motion a portion of Karin's deposition stating she lied to Kennedy on the day of the attack telling him she already had a protective order in an attempt to prevent his violent acts.

At some point in the causal chain, the defendant's conduct may be too remotely connected with the plaintiff's injury to constitute legal causation. *See Union Pump*, 898 S.W.2d at 775. The court in *Union Pump* noted the difficulty we face here, of drawing the line where legal causation may exist and where, as a matter of law, it cannot. *Id.* The court held that legal cause is not established if the defendant's conduct does no more than furnish the condition that makes the plaintiff's injury possible. *Id.* at 776. Viewing the evidence in the light most favorable to Karin, Healey's failure to obtain a protective order did no more than create the condition (absence of a protective order) that enabled Kennedy to kill Karin's children and wound her mother. *Cf. Holder v. Mellon Mortgage Co.*, 954 S.W.2d 786, 801 (Tex. App.—Houston [14th Dist.] 1997, pet granted) (declining to apply *Union Pump* to premises liability action and finding causation was not 'too attenuated' in negligence case against owner of isolated and unattended parking garage where police officer brought motorist to sexually assault). We hold that Healy's failure to obtain a protective order is too attenuated from Kennedy's criminal conduct to constitute a legal cause of injury to Karin, her mother, and her children.

While there may be a fact question as to foreseeability because Healey was aware of numerous threats made by Kennedy immediately prior to his attack,[5] it is im-

---

**5.** In Karin's summary judgment evidence, she listed numerous actions by Kennedy likely to trigger a protective order's arrest provisions. *See* Tex.Fam.Code Ann. § 71.11(b)(1)–(5) (Vernon 1994) (noting that a protective order may prohibit a party having committed family violence from threatening a family member, communicating with a family member in a threatening or harassing manner, going near the residence or place of employment of a family member or engaging in conduct which is reasonably likely to harass, annoy, alarm, abuse, torment or embarrass a family member). For example, in an affidavit attached to her response to Healey's motion for summary judgment Karen made the following statement:

> Throughout this period [after she initiated divorce proceedings] and thereafter, Kenne-

dy harassed me with telephone calls and pages. These conversations all started out with, 'I love you, please don't do this.' They all ended up with, 'you can't do this to me, I'm going to kill.' Kennedy left a particularly distressing series of messages on the answering machine at our trailer. The messages were so violent and incoherent that my father destroyed the tape. I told Healey all about these actions by Kennedy. Healey's summary judgment affidavit included a document created by Karin at Healey's insistence outlining some of Kennedy's past behavior. This list included accounts of Kennedy hitting Karin, threatening her with a gun, destroying walls in their home and breaking their children's toys in anger. Even after her initial visit with Healey, Karin reported to him numerous actions by Kennedy, such as the verbal threats and notes, poten-

material in the absence of legal cause. We hold Healy conclusively disproved cause in fact so as to entitle him to summary judgment.

Therefore, we hold the trial court properly granted summary judgment on Karin's negligence and gross negligence claims because legal cause was negated as a matter of law. In addition, summary judgment was proper on Karin's DTPA claims for the same reasons.

## Breach of Contract and Breach of Warranty

Healey's motion for summary judgment failed to specifically address the breach of contract or breach of warranty claims. On appeal, Healey argues causation is a necessary element for any breach of contract and warranty claims and therefore these were included in the motion for summary judgment. Indulging every reasonable inference in the non-movant's favor, Healey's motion did not fairly present the breach of contract and warranty claims to the trial court. A motion for summary judgment must itself expressly state the grounds upon which it is made, and must stand or fall on these grounds alone. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993). Therefore, the trial court improperly granted summary judgment on the breach of contract and warranty claims.

## Attorney–Client Relationship

In Healey's second reply point, he argues the trial court correctly granted summary judgment as to Marjorie's claims because he established as a matter of law the absence of any attorney-client relationship between himself and Marjorie. Healey's motion for summary judgment, as to Marjorie, was based solely on the argument that there was no attorney-client relationship between the two parties and therefore, Healey owed Marjorie no legal duty. Healey's motion, however, did not address her ability to recover for bystander damages. The motion also did not discuss Marjorie's claims for breach of contract and breach of warranty.

We turn first to the issue of whether Healey owed Majorie any legal duty. The attorney-client relationship is a contractual one in which an attorney agrees, expressly and implicitly, to render professional services for a client. *See Yaklin v. Glusing, Sharpe & Krueger*, 875 S.W.2d 380, 383 (Tex.App.—Corpus Christi 1994, no writ); *Parker v. Carnahan*, 772 S.W.2d 151, 156 (Tex.App.—Texarkana 1989, writ denied). In order to establish an attorney-client relationship, the parties must explicitly or by their conduct manifest an intention to create it. *See Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex.App.—Houston [14th Dist.] 1997, writ dism'd by agr.). To determine whether there was a meeting of the minds, we use an objective standard examining what the parties said and did and do not look at their subjective states of mind. *See id.*

As summary judgment evidence, Healey provided his own affidavit, in which he stated his services were paid for by Karin by means of a check signed by her. He also stated Karin, alone, signed the contract for his services. Healey also denied having ever met Majorie prior to the filing of this lawsuit or ever discussing any aspect of the divorce proceedings with her. He denied the existence of any oral or written contract for his legal services between Majorie and himself.

As evidence supporting her claim that an attorney-client relationship existed, Majorie refers to Karin's affidavit attached to Karin's response to the motion for summary judgment. Majorie alleges Healey knew she and her husband were ultimately paying for Karin's legal services.[6] She

---

tially triggering the arrest provisions of a protective order.

**6.** There is no statement in Karin's affidavit that Healey knew her parents were paying the

also notes the check that Karin wrote to Healey was drawn on a joint account with Marjorie. Last, Marjorie states she spoke with Healey several times concerning the divorce proceedings.

We hold that Marjorie's summary judgment proof fails to raise a fact question demonstrating the existence of any agreement with Healey. Even taking Marjorie's evidence as true, simply engaging in conversation with Healey about her daughter's divorce would not constitute an agreement to enter an express or implicit attorney-client relationship. In addition, even had Marjorie written the check herself, no attorney-client relationship necessarily arises. *See* Texas Disciplinary Rules of Professional Conduct, Rule 1.08, TEX. GOV'T CODE ANN. Tit. 2, Subtit. G— Appendix A, Art. 10 § 9 (Vernon Supp. 1998) (contemplating compensation by source other than client but noting rules of confidentiality still remain as to client thus making a distinction between person providing compensation and client). Therefore, the trial court correctly granted summary judgment for Healey as to Marjorie's negligence and gross negligence claims.

 Next, we must examine whether Marjorie was a consumer under the DTPA. While Healey may not owe Marjorie a duty because no attorney-client relationship exists between the parties, he may owe her a duty under the DTPA. Consumer status is distinct from the attorney-client relationship. *See Burnap v. Linnartz*, 914 S.W.2d 142, 151 (Tex.App.—San Antonio 1995, writ denied) (finding summary judgment was not granted on basis of member's lack of consumer status where consumer status under DTPA was not even mentioned in motions for summary judgment). Whether a party is a consumer under the DTPA is a question of law. *See Moran*, 946 S.W.2d at 406; *Hand v. Dean Witter Reynolds, Inc.*, 889 S.W.2d 483, 496 (Tex.App.—Houston [14th Dist.] 1994, writ denied). However, the

underlying factual basis giving rise to consumer standing may present factual issues for the jury. *See Moran*, 946 S.W.2d at 406.

Again, we find Healey failed to adequately address Marjorie's DTPA claim in his motion for summary judgment. He simply stated summary judgment is also proper for her DTPA claim because there is no attorney-client relationship. As discussed above, however, an attorney-client relationship is not necessary for a DTPA claim. Because Healey did not specifically address the DTPA claim as to Marjorie, we find summary judgment is improper on this basis. *See McConnell*, 858 S.W.2d at 341.

 Marjorie also asserted a claim for bystander damages. Bystander damages are not contingent upon an attorney-client relationship and do not involve causation. In order to establish a valid claim for bystander damages, the plaintiff must show he was located near the scene of the accident and not some distance away. *See Boyles v. Kerr*, 855 S.W.2d 593, 598 (Tex. 1993). Second, the shock to the plaintiff must have resulted from direct emotional impact from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident form others after its occurrence. *See id.* Third, the plaintiff and victim must be closely related. *See id.* Healey, however, altogether failed to discuss bystander damages. It is improper to grant summary judgment on a basis not asserted in the motion for judgment. *See McConnell*, 858 S.W.2d at 341.

### Conclusion

We hold Healey has conclusively disproved causation. Therefore, summary judgment as to Karin is proper on her negligence, gross negligence and DTPA claims. Additionally, we find summary judgment was improper for Healey as to

cost of his representation. Karin stated only that throughout her interaction with Healey

he was "aware of my parents' role in the divorce."

appellants' claims for breach of contract and breach of warranty because Healey failed to include these grounds in his motion for summary judgment. As to Marjorie, we find summary judgment was correct as to the negligence and gross negligence claims. However, we hold that summary judgment for Marjorie was improper as to her DTPA and bystander damages claims.

Accordingly, we affirm the summary judgment as to Karin's negligence, gross negligence and DTPA claims. We affirm the judgment as to Marjorie's claims for negligence and gross negligence.

We reverse the summary judgment on Karin's breach of contract and breach of warranty claims. We also reverse the judgment as to Marjorie's claims for violations of the DTPA, breach of contract, breach of warranty and for bystander damages. These portions of the judgment are reversed and ordered severed and remanded to the trial court for further proceedings consistent with this opinion.

O'NEILL, J., not participating.