
NO. 2-07-325-CV

JERRY BERGTHOLD                                                    APPELLANT

V.

WINSTEAD SECHREST &                                               APPELLEE
MINICK, P.C.

------------

FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

This is a legal malpractice case. Appellant Jerry Bergthold appeals from
the trial court's grant of summary judgment in favor of Appellee Winstead
Sechrest & Minick, P.C. (Winstead). Because the summary judgment evidence
conclusively negates the existence of any attorney-client relationship, as well

---

[1] *See* Tex. R. App. P. 47.4.

as the existence of Bergthold's expectation of representation by Winstead, we will affirm.

## II. FACTUAL BACKGROUND

Bergthold was an employee of Southwestern Bell Yellow Pages (SWBYP). Another SWBYP employee, Virgil Bingham, sued SWBYP for defamation.[2] Jarrett Andrews, an associate at Winstead, represented SWBYP in the *Bingham* litigation, and attorney Tom Carse represented Bingham. Attorney Carse deposed Bergthold on October 20, 2005 as part of the *Bingham* litigation. Attorney Andrews defended the deposition. Attorney Carse represents Bergthold in the present litigation.

In September 2004—almost a year before Bergthold's October 20, 2005 deposition in the *Bingham* litigation—Bergthold began consulting with attorney Carse about filing his own suit against SWBYP. Bergthold, a senior account representative (SAR) with SWBYP, met at least twice with attorney Carse prior to his October 20, 2005 deposition. Ten to twelve other SARs with SWBYP also attended those meetings with attorney Carse. When Bergthold was asked at his deposition in this litigation, "And the purpose of that meeting was what?"

---

[2] *See Bingham v. Sw. Bell Yellow Pages, Inc.*, No. 02-06-00229-CV, 2008 WL 163551, at *1 (Tex. App.—Fort Worth Jan. 17, 2008, no pet. h.) (mem. op. on reh'g). That litigation is referred to as the *Bingham* litigation.

Attorney Carse objected on the ground of "attorney-client privilege." Bergthold thereafter refused to answer based on attorney-client privilege. Bergthold testified that he had not retained attorney Carse but that "all the [SARs] for [SWBYP] in the Dallas/Fort Worth area, which there were like 10 or 12 of us, had met with Mr. Carse to discuss pay and issues with the company in the SAR position." Bergthold was also asked on what date he had paid a retainer fee to attorney Carse. Attorney Carse objected and instructed Bergthold not to answer based on the attorney-client privilege.

On the day that Bergthold was scheduled to be deposed by attorney Carse in the *Bingham* litigation, the depositions were running long. Several people were deposed that morning by attorney Carse, including Sue Sharley and Susan Fuchs. During Sharley's deposition, attorney Andrews stated on the record that Sharley "is represented by counsel here today" and that he represented her "as a company representative, which is the capacity she's here in today." At lunchtime, prior to Bergthold's scheduled deposition, Bergthold, Sharley, Fuchs, Bingham, and attorney Carse went to eat lunch together. At the lunch, they discussed how Sharley's deposition went, including, "[w]as it difficult[,] [w]as it easy[,] . . . is there anything that [Bergthold] need[s] to be aware of that would help [him] when [he goes] in." Sharley told the group, in front of attorney Carse, that "multi-year contracts were an issue."

3

Bergthold's deposition in the *Bingham* litigation ultimately was not taken the same date as Sharley's but was rescheduled for October 20, 2005. During the deposition, Bergthold produced confidential SWBYP documents called multi-year contracts. Bergthold testified that he brought the documents because Bingham had asked him about multi-year contracts, and he "brought them in case it came up" during his deposition. He further testified that he did not seek, and no one at SWBYP gave him, permission to take the documents to his deposition. Bergthold conceded at his deposition in this litigation that attorney Andrews did not know of the existence of the multi-year contracts before Bergthold produced them. During breaks in his deposition in the *Bingham* litigation, Bergthold visited with attorney Carse, although he denied that they discussed the *Bingham* case. At the conclusion of Bergthold's deposition, attorney Andrews mentioned that Bergthold might be in some trouble for producing the multi-year contracts. Bergthold got in the elevator with attorney Carse and asked him what attorney Andrews had meant by that comment. Attorney Carse told Bergthold, "[I]f there's any adverse consequences that came from my [Bergthold's] deposition in terms of Bell's [SWBYP's] doing anything punitive, that I should notify him."

Seven days after his deposition, Bergthold—with Carse as his attorney—filed this suit against SWBYP for defamation and tortious interference

4

with his union contract.  The defamation allegedly occurred in September 2004, before Bergthold's October 20, 2005 deposition in the *Bingham* litigation.  A month later, SWBYP terminated Bergthold for producing the confidential documents at his deposition in violation of SWBYP company policy.

Bergthold added Winstead as a defendant in his suit against SWBYP, alleging that attorney Andrews's failure to advise Bergthold not to produce the documents resulted in Bergthold's termination.  Specifically, Bergthold asserted causes of action for legal malpractice and ordinary negligence, alleging that attorney Andrews negligently failed to advise Bergthold not to produce the confidential documents or object to their production and, alternatively, that attorney Andrews negligently failed to inform Bergthold that he was not Bergthold's attorney.[3]  Bergthold later nonsuited SWBYP, leaving Winstead as the sole defendant.

In a deposition Bergthold gave as part of this litigation in July 2006—before he joined Winstead as a defendant—he testified that when he

---

[3] Bergthold also asserted causes of action for intentional infliction of emotional distress—which he had abandoned by the time he filed his eighth amended original petition—and for tortious interference with his union contract. The trial court granted summary judgment on his tortious interference claim, and Bergthold does not argue on appeal that the trial court erred by so doing. Instead, his brief on appeal challenges only the propriety of summary judgment granted on his legal malpractice and negligence claims.

gave his deposition in the *Bingham* litigation, "Jared Andrews was . . . repping -- representing the company." And in an April 2007 deposition—after he sued Winstead—Bergthold testified that he received an email informing him that attorney Andrews was representing SWBYP against Bingham's claims. But in that same deposition, Bergthold also said that attorney Andrews called him two or three times before he gave his deposition in the *Bingham* litigation and told him that "he was representing the company and its employees." Later in the same deposition, Bergthold testified that "Mr. Andrews indicated that he was representing us as employees, because Southwestern Bell was, in fact, providing us to Mr. Carse to be deposed and, as such, we were also his client." Bergthold further testified that he asked attorney Andrews whether he should take anything to his deposition and that Andrews told him "that if [he] had to have [] document[s] to answer a question, to bring [them]."

At attorney Andrews's deposition in this litigation, he testified that he was present during Bergthold's April 2007 deposition and heard Bergthold's testimony about their phone conferences. When asked whether Bergthold left anything out of his description of the conferences, attorney Andrews said that when he first contacted Bergthold, he told Bergthold "that I represent Southwestern Bell Yellow Pages and the employee being sued, Steve Brown." He also testified that when Bergthold asked him if he should take anything to

the *Bingham* deposition, attorney Andrews told him, "no, we generally don't advise witnesses to bring anything unless . . . we think you're going to need it . . . and in this case, I don't think we anticipate anything like that."

Winstead eventually filed a motion for summary judgment on Bergthold's legal malpractice and negligence claims, asserting that it had no attorney-client relationship with Bergthold and thus owed him no duty as a matter of law.[4] The trial court granted the motion, and Bergthold filed this appeal.

### III. SUMMARY JUDGMENT WAS PROPER

### A. No-evidence or Traditional Summary Judgment

Before turning to the merits of the case, we must first determine whether Winstead filed, and the trial court granted, a no-evidence motion for summary judgment, a traditional motion for summary judgment, or a hybrid motion with regard to Bergthold's legal malpractice and negligence claims. In the first paragraph of its motion, Winstead stated that it filed the motion "pursuant to Texas Rules of Civil Procedure 166a(b) and (i)." The "argument and authorities" section of the motion begins with two paragraphs describing both

---

[4] Winstead also moved for no-evidence and traditional summary judgment on Bergthold's claims for tortious interference and intentional infliction of emotional distress, but those motions are not at issue in this appeal because Bergthold abandoned his intentional infliction of emotional distress claim before summary judgment and does not challenge the trial court's summary judgment on his tortious interference claim.

the traditional and the no-evidence summary judgment standards. But the words "no evidence" appear nowhere in the section of the motion discussing Bergthold's legal malpractice claim, and, with respect to this claim, the motion fails to identify "the essential elements of a claim or defense" for which there is no evidence as required by rule 166a(i). Tex. R. Civ. P. 166a(i) & cmt.; *Mott v. Red's Safe & Lock Servs., Inc.*, 249 S.W.3d 90, 98 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that a motion that fails to state specific elements is fundamentally defective and insufficient to support summary judgment as a matter of law). Instead, Winstead analyzed at considerable length the summary judgment evidence attached to its own motion and argued that the evidence conclusively negated elements of Bergthold's claim, such as an attorney-client relationship and duty. By contrast, in the sections of its motion challenging Bergthold's intentional infliction of emotional distress and tortious interference claims, Winstead specifically identified elements of the claims for which Bergthold could present no evidence.

The trial court's order granting summary judgment does not specify whether it is a no-evidence or traditional summary judgment. On appeal, Bergthold's first issue is that the trial court erred by granting Winstead a traditional summary judgment on his legal malpractice claim, and his second issue is that the trial court erred by granting Winstead a no-evidence summary

judgment on his legal malpractice claim. In response to Bergthold's second issue, Winstead argues that the trial court did not err by granting a no-evidence summary judgment; unlike its trial court motion, Winstead's appellate brief specifically identifies elements of Bergthold's claim for which there is no evidence.

Based on the record before us, we hold that Winstead's summary judgment motion on Bergthold's legal malpractice claim was not a no-evidence motion because it failed to identify the essential elements of the claim for which there is no evidence as required by rule 166a(i). *See* Tex. R. Civ. P. 166a(i) & cmt.; Mott, 249 S.W.3d at 98. Therefore, we will analyze the summary judgment on Bergthold's legal malpractice claims under the traditional summary judgment standard of review. Because Winstead did not file a no-evidence motion on the legal malpractice claim, the trial court could not grant a no-evidence summary judgment on that claim; thus, we overrule Bergthold's second issue as moot.

## B. Traditional Summary Judgment Standard of Review

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant,* 73 S.W.3d 211,

215 (Tex. 2002); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *Sw. Elec. Power Co.*, 73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). We will affirm a summary judgment only if the record establishes that the movant has conclusively proved all essential elements of the movant's cause of action or defense as a matter of law. *Clear Creek Basin*, 589 S.W.2d at 678.

### C. Attorney-Client Relationship Law

To recover on a claim of legal malpractice, a plaintiff must prove (1) the attorney owed the plaintiff a duty; (2) the attorney breached that duty; (3) the breach proximately caused the plaintiff's injuries; and (4) damages occurred. *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995); *Stancu v. Stalcup*, 127 S.W.3d 429, 433 (Tex. App.—Dallas 2004, no pet.). An attorney

10

owes a duty of care only to his or her client, not to third parties who may have been damaged by the attorney's negligent representation of the client. *Barcelo v. Elliott*, 923 S.W.2d 575, 578 (Tex. 1996) (preserving a bright-line privity rule denying a cause of action to all estate beneficiaries whom the attorney did not represent). Under Texas law, attorneys are not ordinarily liable for damages to a nonclient because privity of contract is absent. *Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 484 (Tex. 1992). When a defendant moves for a summary judgment because no attorney-client relationship exists, the defendant takes on the burden of proving the nonexistence of the relationship as a matter of law. *Stancu*, 127 S.W.3d at 433; *Yaklin v. Glusing*, *Sharpe & Krueger*, 875 S.W.2d 380, 383 (Tex. App.—Corpus Christi 1994, no writ).

The attorney-client relationship may be expressly created through a contract, or it may be implied from the actions of the parties. *Bright v. Addison*, 171 S.W.3d 588, 596 (Tex. App.—Dallas 2005, pet. denied); *Honeycutt v. Billingsley*, 992 S.W.2d 570, 581 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). To establish an attorney-client relationship, the parties must explicitly or by their conduct manifest an intention to create it. *Roberts v. Healey*, 991 S.W.2d 873, 880 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (citing *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.)). Whether there was a

11

meeting of minds between the parties to create an attorney-client relationship is determined under an objective standard examining what the parties said and did, not by the parties' subjective states of mind. *Bright*, 171 S.W.3d at 596; *Roberts*, 991 S.W.2d at 880; *Vinson & Elkins*, 946 S.W.2d at 405.

Thus, an attorney-client relationship may be implied from the conduct of the two parties. *Kotzur v. Kelly*, 791 S.W.2d 254, 257–58 (Tex. App.—Corpus Christi 1990, no writ); *Parker v. Carnahan*, 772 S.W.2d 151, 157 (Tex. App.—Texarkana 1989, writ denied); *see also Lemaire v. Davis*, 79 S.W.3d 592, 600 (Tex. App.—Amarillo 2002, pet. denied) (explaining that an attorney-client relationship may be implied "from the conduct of the parties"); *Scientific Leasing, Inc. v. Windle*, No. 05-92-00469-CV, 1993 WL 25336, at *5 (Tex. App.—Dallas Feb. 4, 1993, no writ) (not designated for publication) ("*Both* parties must manifest an intention to create an attorney-client relationship by their conduct."). Conversely, an attorney-client relationship cannot be implied based simply on the conduct of an attorney; the "client" must also engage in conduct evidencing the client's acceptance of the attorney-client relationship. *See Collin County v. Johnson*, No. 05-95-00281-CV, 1996 WL 223590, at *5–6 (Tex. App.—Dallas Apr. 30, 1996, no writ) (not designated for publication) (refusing to imply attorney-client relationship because conduct of

plaintiff—the alleged client—"indicates that it was looking to American States Insurance rather than to [attorney] Johnson to protect its subrogation interest").

Even in the absence of an attorney-client relationship, an attorney may be liable for negligently failing to advise a party that he is not representing the party. *Burnap v. Linnartz*, 914 S.W.2d 142, 148 (Tex. App.—San Antonio 1995, writ denied); *Kotzur*, 791 S.W.2d at 258; *Parker*, 772 S.W.2d at 157. Generally, such negligence cannot be established in the absence of evidence that the attorney knew that the party had assumed that he was representing the party in a matter. *Burnap*, 914 S.W.2d at 148–49 (citing *Dillard v. Broyles*, 633 S.W.2d 636, 643 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.), *cert. denied*, 463 U.S. 1208 (1983)). If circumstances lead a party to believe that it is represented by an attorney, however, the attorney may be held negligent for failing to advise that party of the attorney's non-representation. *Id.* at 149; *Parker*, 772 S.W.2d at 157; *Rice v. Forestier*, 415 S.W.2d 711, 713 (Tex. Civ. App.—San Antonio 1967, writ ref'd n.r.e.). The question is whether the attorney was aware or should have been aware that his conduct would have led a reasonable person to believe that the attorney was representing that person. *Burnap*, 914 S.W.2d at 149; *Parker*, 772 S.W.2d at 157.[5]

---

[5] Bergthold cites disciplinary rule of professional conduct 1.12 as a standard of liability. Rule 1.12 provides that a lawyer representing an

13

### D. No Attorney-Client Relationship

On appeal, Bergthold does not argue that he entered into an express attorney-client relationship with attorney Andrews and Winstead. We therefore turn to the summary judgment evidence of what the parties said and did to determine whether Winstead conclusively negated the existence of an implied attorney-client relationship. *See Bright*, 171 S.W.3d at 596; *Roberts*, 991 S.W.2d at 880; *Vinson & Elkins*, 946 S.W.2d at 405.

To recap the summary judgment evidence, according to Bergthold, attorney Andrews told Bergthold that Winstead represented both SWBYP and its employees, including Bergthold. Attorney Andrews called Bergthold two or three times before Bergthold's deposition in the *Bingham* litigation. Bergthold

---

organization shall—when dealing with the organization's employees—explain the identity of the client when it is apparent that the organization's interests are adverse to those of its constituents. Tex. Disciplinary R. Prof'l Conduct 1.12(e). But the preamble to the State Bar Rules states that the rules do not define standards of civil liability, that violation of the rules does not give rise to a private cause of action nor create any presumption that a legal duty to a client has been breached, and that nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences of violating such a duty. *Id.* preamble ¶ 15. The disciplinary rules set forth the proper conduct of lawyers solely for the purpose of discipline within the profession. 1 J. Hadley Edgar, Jr. & James B. Sales, *Texas Torts & Remedies* § 12.02[1][a][ii][A] (2000). A private cause of action does not exist for violation of the disciplinary rules. *Id*.; *Jones v. Blume*, 196 S.W.3d 440, 449 (Tex. App.—Dallas 2006, pet. denied). Thus, our analysis will focus on the common law standards of liability articulated in the foregoing paragraphs.

and attorney Andrews both testified that Bergthold asked attorney Andrews whether he should take anything to his deposition. According to Bergthold, attorney Andrews "suggested or indicated that if I had to have a document to answer a question, to bring it. He didn't say which documents or how." This objective evidence of what the parties said and did is some evidence of attorney Andrews's intention to create an attorney-client relationship, but there must also be some objective evidence of Bergthold's intention to create an attorney-client relationship; that is, there must be some evidence of a mutual understanding between the parties that attorney Andrews was acting as Bergthold's counsel. *See Bright*, 171 S.W.3d at 596; *Roberts*, 991 S.W.2d at 880; *Vinson & Elkins*, 946 S.W.2d at 405.

Bergthold's conduct—conclusively established in the summary judgment record through Bergthold's own testimony—defeats as a matter of law any implied attorney-client relationship between himself and attorney Andrews during Bergthold's deposition in the *Bingham* litigation. Bergthold contacted and met several times with attorney Carse beginning more than a year before his deposition in the *Bingham* litigation. Bergthold refused to disclose the purpose of these meetings, or the date on which Bergthold paid attorney Carse a retainer fee, based on attorney-client privilege—an attorney-client relationship between Bergthold and attorney Carse that existed prior to October 20, 2005.

15

Later, Bergthold revealed that the meetings were to "discuss those complaints [against SWBYP] and . . . what remedies we may or may not have or what we could or couldn't do about those." On the date of his scheduled deposition in the *Bingham* litigation and prior to his deposition, Bergthold went to lunch with attorney Carse and Bingham; and Sharley discussed her deposition in front of attorney Carse and fielded questions from Bergthold about anything that would help him in his deposition. Additionally, Sharley informed Bergthold in front of attorney Carse that multi-year contracts were an issue. Seven days after Bergthold's deposition in the *Bingham* litigation, attorney Carse filed suit on Bergthold's behalf against SWBYP, asserting a cause of action for defamation that allegedly occurred on a date prior to Bergthold's deposition in the *Bingham* litigation.

The summary judgment evidence establishes that Bergthold and attorney Andrews spoke three times via telephone prior to Bergthold's deposition. Attorney Andrews called Bergthold each time they spoke; Bergthold never called attorney Andrews. Bergthold testified that he did not tell attorney Andrews that he was bringing the multi-year contracts to his deposition and did not show the contracts to attorney Andrews before his deposition. Bergthold admitted that attorney Andrews did not know of the existence of the multi-year contracts before the deposition.

16

In the trial court and on appeal, the parties argue over the significance of attorney Andrews's statements—made at Sharley's deposition in the *Bingham* litigation—that he represented Sharley, but any attorney-client relationship attorney Andrews may or may not have had with Sharley has no bearing on whether Bergthold's conduct manifested an implied attorney client relationship between himself and attorney Andrews. In short, Winstead's summary judgment evidence concerning Bergthold's conduct conclusively establishes that Bergthold did not engage in conduct manifesting the existence of an implied attorney-client relationship between himself and attorney Andrews.

Bergthold's conduct as reflected in the summary judgment evidence, if anything, manifested the existence of an implied attorney-client relationship between himself and attorney Carse on October 20, 2005 during his deposition in the *Bingham* litigation. *See, e.g., Brown v. McCleskey, Harriger, Brazil and Graf, L.L.P.*, No. 07-99-00027-CV, 1999 WL 795478, at *6–7 (Tex. App.—Amarillo Oct. 6, 1999, pet. denied) (not designated for publication) (noting factors external to the transaction at issue—including representation on other matters—that could support an inference that attorney knew client thought attorney was representing him). Bergthold went to lunch with attorney Carse, Bingham, Fuchs, and Sharley; sought advice concerning his deposition; and was told that multi-year contracts were at issue. Attorney Carse

17

rescheduled his deposition of Bergthold, and Bergthold—without consulting the attorney he now claims represented him specifically on whether he should bring multi-year contracts—brought them with him to his deposition. Additionally, Bergthold visited with attorney Carse during breaks in his deposition, Berthold went to attorney Carse for advice and clarification of the meaning of attorney Andrews's comment at the end of his deposition, and attorney Carse responded that he would protect Bergthold's interests if SWBYP engaged in any punitive conduct.

Thus, even viewing all of the summary judgment evidence in the light most favorable to Bergthold, at most that summary judgment evidence establishes that possibly *attorney Andrews's* conduct might have manifested an intent that he represent Bergthold at his October 20, 2005 deposition in the *Bingham* litigation. But an attorney-client relationship cannot be implied based on the conduct of only one party. *See Kotzur*, 791 S.W.2d at 257–58; *Parker*, 772 S.W.2d at 157. The summary judgment evidence concerning *Bergthold's conduct* conclusively establishes that Bergthold did not engage in any conduct manifesting an implied attorney-client relationship with attorney Andrews and instead indicates that Bergthold was not looking to attorney Andrews, but to attorney Carse, to protect his interests during his deposition in the *Bingham* litigation.

**E. No Duty to Inform of Non-Existence of Attorney-Client Relationship**

Likewise, the same evidence detailed above conclusively negates the existence of any duty by attorney Andrews to inform Bergthold that he did not represent Bergthold. Such a duty may arise when circumstances lead a reasonable person to believe they are represented by the attorney. *Burnap*, 914 S.W.2d at 149. In determining whether such a duty exists, we examine the conduct of the parties at the time of the assumed representation—here, leading up to and during Bergthold's deposition in the *Bingham* litigation. Bergthold's conduct, as reflected in the summary judgment evidence, is inconsistent with an assumption that attorney Andrews represented him at his October 20, 2005 deposition. *See Dillard*, 633 S.W.2d at 643 (declining to impose duty on attorney to affirmatively deny that he represented appellants when there was no evidence that appellants assumed attorney represented them). Bergthold never initiated contact with attorney Andrews, Bergthold did not tell attorney Andrews that he was bringing the multi-year contracts to his deposition or even inform attorney Andrews of the existence of such contracts, Bergthold went to lunch with attorney Carse—the attorney taking his deposition—on the day of his deposition, and Bergthold had a conversation with Sharley, in front of attorney Carse, about what to expect in his deposition. Bergthold's conduct demonstrates that he affirmatively rejected any representation by attorney

19

Andrews during his deposition. And Bergthold could not have been represented during his deposition by both attorney Carse, the attorney taking his deposition, and attorney Andrews, the attorney defending his deposition. Under these narrow facts, because the summary judgment evidence, even viewed in the light most favorable to Bergthold, conclusively establishes that Bergthold rejected representation by attorney Andrews at his October 20, 2005 deposition in the *Bingham* litigation and instead looked to attorney Carse for representation, attorney Andrews possessed no duty to tell Bergthold that he did not represent Bergthold at that deposition.

Consequently, because the summary judgment evidence conclusively establishes that no attorney-client relationship existed between attorney Andrews and Bergthold and that attorney Andrews had no duty to inform Bergthold that he did not represent him, we hold that the trial court did not err by granting summary judgment on this basis. Accordingly, we overrule Bergthold's first issue.

**IV. CONCLUSION**

Having overruled both of Bergthold's issues, we affirm the trial court's summary judgment for Winstead.

SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

GARDNER, J. filed a concurring and dissenting opinion.

DELIVERED: January 29, 2009

21



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-07-325-CV

JERRY BERGTHOLD                                                    APPELLANT

V.

WINSTEAD SECHREST &                                                  APPELLEE
MINICK, P.C.

------------

## FROM THE 236TH DISTRICT COURT OF TARRANT COUNTY

------------

### CONCURRING AND DISSENTING MEMORANDUM OPINION[1]

I agree with the majority that Winstead's summary judgment motion on Bergthold's legal malpractice claim was not a no-evidence motion and must be reviewed under the traditional standard of review. I agree that the summary judgment evidence conclusively established that neither an express nor an implied attorney-client relationship existed between Winstead and Bergthold. However, I must disagree that Winstead conclusively established on this record that attorney Andrews owed no duty to affirmatively advise Bergthold that he did not represent him in the deposition.

---

[1] *See* Tex. R. App. P. 47.4.

I believe we must indulge the reasonable inference in favor of Bergthold from the evidence of what the parties said and did, particularly Bergthold's testimony that attorney Andrews told him he was representing him in the matter, that Andrews thereby knew or at least should have known that his conduct would lead a reasonable person to assume Andrews (and hence, Winstead) was, indeed, representing Bergthold.[2]

*Dillards v. Broyles*[3] is cited by the majority for the proposition that no duty to advise arose when there was no evidence that appellants assumed that the attorney represented them. *Dillards* involved an instructed verdict, which was proper where there was no evidence to raise an issue of fact for the jury. But we are reviewing a traditional summary judgment requiring that evidence negate an element of a claim as a matter of law, not a no-evidence motion. And again,

---

[2] *See Burnap v. Linnartz*, 914 S.W.2d 142, 149 (Tex. App.—San Antonio 1995, writ denied) (holding circumstances may lead a party to believe they are represented by an attorney); *Parker v. Carnahan*, 772 S.W.2d 151, 157 (Tex. App.—Texarkana 1989, writ denied) (holding fact issue on duty raised by evidence attorneys were aware or should have been aware their conduct would lead a reasonable person to believe she was being represented by them).

[3] 633 S.W.2d 636, 643 (Tex. Civ. App.—Corpus Christi, writ ref'd n.r.e.), *cert. denied*, 463 U.S. 1208 (1983).

unlike *Dillards*, there is affirmative evidence here that attorney Andrews told Bergthold he was representing him.[4] We cannot simply disregard that evidence.

As the majority recognizes, when reviewing a traditional summary judgment, the issue is whether the movant established its right to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002); *City of the Colony v. N. Tex. Mun. Water Dist.*, No. 02-07-00128-CV, 2008 WL 5056886, at *8 (Tex. App.—Fort Worth, Nov. 26, 2008, no pet. h.). The burden of proof was on Winstead, and we must indulge every reasonable inference and resolve all doubts about the existence of a genuine issue of material fact in favor of Bergthold, the nonmovant. *Sw. Elec. Power Co.*, 73 S.W.3d at 215. We take as true all evidence favorable to Bergthold. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Reviewed under the proper standard, I do not believe Winstead met its burden with respect to Bergthold's negligence claim.

ANNE GARDNER
JUSTICE

DELIVERED: January 29, 2009

---

[4] Likewise, there was no evidence offered in *Brown v. McCleskey*, No. 07-99-00027-CV, 1999 WL 795478 (Tex. App.—Amarillo October 6,1999, pet. denied) (not designated for publication), unlike in this case, that the attorney told the putative client that he represented her.

3