# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH
### NO. 02-09-00380-CV


ROGER K. PARSONS,                                        APPELLANT
INDIVIDUALLY AND AS THE
INDEPENDENT ADMINISTRATOR
FOR THE ESTATE OF ESTHER
ANN KARTSOTIS PARSONS

V.

LISA A. BLUE BARON AS                                 APPELLEES
EXECUTRIX OF THE ESTATE OF
FREDERICK M. BARON AND
BARON & BUDD, P.C.

----------

### FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. Introduction

Appellant Roger K. Parsons, Individually and as the Independent Administrator for the Estate of Esther Ann Kartsotis Parsons (Parsons), appeals

---

[1]*See* Tex. R. App. P. 47.4.

the trial court's summary judgment against him and in favor of Appellees Lisa A. Blue Baron as Executrix of the Estate of Frederick M. Baron and Baron & Budd, P.C. (collectively, Baron & Budd). In sixteen issues, Parsons challenges the summary judgment for Baron & Budd and also contends that the trial court judge should have been disqualified. We affirm.[2]

## II. Background

In November 1991, Parsons retained Windle Turley and Windle Turley, P.C. (collectively, Turley) to represent him in wrongful death and survival actions in connection with the death of his wife (the DuPont Litigation). A jury returned a verdict for Parsons awarding him $4.75 million in damages and also awarding punitive damages. The trial court granted judgment notwithstanding the verdict on the punitive damages but signed a $4.75 million judgment for Parsons.

In July 1996, Parsons retained Robert Greenberg to sue Turley for legal malpractice (the Turley Litigation) relating to Turley's representation of him in the DuPont Litigation. The trial court granted summary judgment for Turley, and the Dallas Court of Appeals affirmed the summary judgment on limitations grounds because Turley was not served with citation prior to the expiration of the statute of limitation. *See Parsons v. Turley*, 109 S.W.3d 804, 808–10 (Tex. App.— Dallas 2003, pet. denied).

---

[2]Also pending before the court are two post-submission motions filed by Parsons. Each motion is addressed within this opinion.

In the meantime, Parsons retained a new attorney and filed the instant legal malpractice suit against Greenberg and Motsenbocker (who Parsons had hired at Greenberg's suggestion) for their representation in the Turley Litigation. Acting pro se, Parsons subsequently added Baron & Budd as additional defendants.[3] Baron & Budd then filed no-evidence and traditional motions for summary judgment as to each cause of action Parsons had asserted against it. Parsons filed at least three pro se responses to the motions, only two of which were timely.[4] The trial court granted summary judgment for Baron & Budd without stating the grounds and later severed the summary judgment for Baron & Budd from the underlying cause. Parsons thereafter perfected this appeal.

---

[3]Kevin Queenan was Parsons's attorney when he filed his original petition in this case, but Queenan was permitted to withdraw shortly after Parsons filed his pro se third amended petition.

[4]Parsons filed his original response to the motion for summary judgment on May 29, 2009. He later filed an amended response that was mailed to the trial court more than seven days before the summary judgment hearing but filed within seven days of the hearing on July 20, 2009; the July 20, 2009 amended response was therefore timely. *See* Tex. R. Civ. P. 5, 166a(c). Parsons filed another amended response the day before the summary judgment hearing, but it was untimely. *See* Tex. R. Civ. P. 166a(c). The July 20, 2009 amended response to Baron & Budd's motion for summary judgment is the response that we have reviewed in this appeal. In that regard, we deny as moot Parsons's post-submission "Motion that the court rule that it should fully consider and rule upon points of error '2a' and '2b,' as addressed in [Parsons]'s Reply Brief." Because these arguments relating to the timeliness of the July 20, 2009 response were made in Parsons's reply brief, they were already before this court at the time of the post-submission brief.

## III. Standard of Review

### A. Traditional Summary Judgment

We review a summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010), *cert. denied*, 131 S. Ct. 1017 (2011); *see* Tex. R. Civ. P. 166a(b), (c).

### B. No-Evidence Summary Judgment

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of

4

material fact.  *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.  *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006).  We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions.  *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)).  We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not.  *Timpte Indus.*, 286 S.W.3d at 310 (quoting *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006)).  If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper.  *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

## IV. Summary Judgment

Parsons challenges the trial court's summary judgment on his claims for negligence, respondeat superior, breach of fiduciary duty, fraud, and unjust enrichment.[5] We address each claim in turn.

### A. Negligence

Parsons contends in his first seven issues that the trial court erred by granting summary judgment on his negligence claims against Baron & Budd.[6] Baron & Budd responds that Parsons failed to present evidence of an attorney-client relationship between himself and Baron & Budd.

#### 1. Applicable Law

A plaintiff in a legal malpractice suit must prove that (1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred. *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 496 (Tex. 1995); *Stancu v. Stalcup*, 127 S.W.3d 429, 433 (Tex. App.—Dallas 2004, no pet.). An attorney owes a duty of care only to his or

---

[5]Parsons's statement of issues lists separate causes of action for misrepresentation and fraud, but he treats them as one cause of action in his argument section, just as he did in the trial court. We thus address misrepresentation and fraud as one cause of action, and we address Parsons's claims for unjust enrichment and constructive trust as one for the same reason. However, we express no opinion as to whether misrepresentation and fraud or unjust enrichment and constructive trust are separate causes of action.

[6]Parsons also argues that the trial court erred by sustaining certain objections to his summary judgment evidence, but we have reviewed the summary judgment record as if the trial court did not sustain any of Baron & Budd's objections. Thus, we need not address these arguments.

her client, not to third parties who may have been damaged by the attorney's negligent representation of the client. *Barcelo v. Elliott*, 923 S.W.2d 575, 578 (Tex. 1996) (preserving a bright-line privity rule denying a cause of action to all estate beneficiaries whom the attorney did not represent). Under Texas law, attorneys are not ordinarily liable for damages to nonclients because there is no privity of contract. *Am. Centennial Ins. Co. v. Canal Ins. Co.*, 843 S.W.2d 480, 484 (Tex. 1992).

The attorney-client relationship may be expressly created through a contract, or it may be implied from the actions of the parties. *Bright v. Addison*, 171 S.W.3d 588, 596 (Tex. App.—Dallas 2005, pet. denied); *Honeycutt v. Billingsley*, 992 S.W.2d 570, 581 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). To establish an attorney-client relationship, the parties must explicitly or by their conduct manifest an intention to create it. *Roberts v. Healey*, 991 S.W.2d 873, 880 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (citing *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.)). Whether there was a meeting of minds between the parties to create an attorney-client relationship is determined under an objective standard examining what the parties said and did, not by the parties' subjective states of mind. *Bright*, 171 S.W.3d at 596; *Roberts*, 991 S.W.2d at 880; *Moran*, 946 S.W.2d at 405.

## 2. Applicable Facts

Parsons's July 20, 2009 amended response to Baron & Budd's motion for summary judgment relied on two items of summary judgment evidence that are relevant to this appeal: Parsons's affidavit and excerpts from the deposition of Sidney K. Powell.[7]

Parsons testified by affidavit that he hired Sidney K. Powell and S. Ann Saucer in December 1995 as legal counsel on appeal in the DuPont Litigation. At the time, Parsons learned that Powell and Saucer were working with Baron & Budd on the appeal of a case pending before the Fifth Circuit (the *Ahearn* case). Parsons testified that he attended the oral argument in the Fifth Circuit case. Parsons continued,

> Following the oral arguments, Baron invited me to lunch with his appellate team that included my attorneys Powell and Saucer. Over lunch I told Baron about my complaints with the Turley Defendants and thanked him for his diligence in the *Ahearn* case.
>
> I trusted and confided in Baron because Powell and Saucer, with whom I had a[n] attorney-client relationship, advised me that they trusted and confided in both Baron and Baron's wife . . .

---

[7]Parsons also attached his response to Greenberg's 2007 motion for summary judgment and asked that the trial court take judicial notice of his fifth and sixth amended petitions, but the trial court struck Parsons's fifth amended petition as it related to Baron & Budd and denied Parsons's motion for leave to file the sixth amended petition. It is also well-settled that a party generally may not rely on its own pleadings as summary judgment evidence. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer*, 904 S.W.2d 656, 660–61 (Tex. 1995) (discussing *Hidalgo v. Surety Sav. & Loan Ass'n*, 462 S.W.2d 540, 545 (Tex. 1971)).

Parsons's affidavit also stated that he had informed Powell that "it was [his] intention to hire a lawyer having Baron's qualities and capabilities who was willing and able to investigate and prosecute all of my viable claims against the Turley Defendants."

Other arguably relevant averments from Parsons's affidavit are:

● In July 1996, the Barons, based upon what I had told Baron and what Powell had told Baron and Blue[,] referred me to me [sic] to their friend and personal lawyer Robert M. Greenberg ("Greenberg") to handle the claims that I wanted investigated and prosecuted.

● In July 1996, Greenberg agreed to work on my case, and by December 1996, Greenberg enthusiastically advised me to hire F. Clif Cameron ("Cameron"), a private investigator who also did considerable work for [Baron & Budd], as a necessary step toward discovering evidence that had been hidden or destroyed [in the DuPont litigation].

● Baron represented that his personal lawyers would handle this case. I trusted Baron and considered him to be a skilled lawyer, and one who was very interested in justice.

● I understood that the Barons' referral was a material representation to me that Greenberg's expertise and experience qualified him to handle my cases.

● I was advised by [Greenberg and Motsenbocker] that they worked closely with Fred Baron and that they would do my case. Baron also told me that. They represented that they could jointly handle a case against Turley and that however it would be necessary to work as a team, and the team was an enterprise consisting of the Greenberg/Motsenbocker Defendants, Fred Baron, Baron and Budd[,] and the investigator, Clif Cameron.

● My attorneys also represented that they were an enterprise and by working with them, we were going to get the benefit of the Baron resources and alliance. Greenberg represented that he was Fred Baron's lawyer.

9

● My attorneys represented that Attorney-Greenberg was corporate counsel for Baron.

Powell testified in her deposition that she attempted to help Parsons find counsel to sue Turley by making "some phone calls to other lawyers that [she] knew and respected and asked for their recommendations and then followed up on those." Powell also testified that she spoke with Baron about Parsons. Powell testified that Baron said that "Greenberg was an excellent lawyer and was also his lawyer," meaning that Greenberg "had represented either [Baron] or the law firm in any number of cases."

### 3.  No Attorney-Client Relationship

In its motion for no-evidence summary judgment, Baron & Budd argued that Parsons had no evidence of a duty owed to him by Baron & Budd. "In a general sense, an attorney-client relationship arises from a lawyer's agreement to render professional services to a client." *Valls v. Johanson & Fairless, L.L.P.*, 314 S.W.3d 624, 633 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Greene's Pressure Treating & Rentals, Inc. v. Fulbright & Jaworski, L.L.P.*, 178 S.W.3d 40, 43 (Tex. App.—Houston [1st Dist.] 2005, no pet.)). That agreement may be implied from the parties' conduct, but "[w]hether the agreement is express or implied, however, there still must be some manifestation that *both* parties intended to create an attorney-client relationship; therefore, one party's mistaken belief is not sufficient, by itself." *Id.* at 634.

10

Parsons presented no evidence of an implied legal services contract or attorney-client relationship between himself and Baron & Budd. Baron's only conduct toward Parsons was to listen to Parsons's complaints about Turley over lunch and to tell Powell that "Greenberg was an excellent lawyer and was also his lawyer." Powell understood this to mean that Greenberg "had represented either [Baron] or the law firm in any number of cases." Neither of these occurrences suggests an intention or agreement by Baron to enter into an attorney-client relationship with Parsons. Rather than evidence of conduct by Baron, the bulk of Parsons's evidence relates to statements made to him by Greenberg or his own subjective beliefs about his relationship with Baron & Budd.

Parsons argues that he presented evidence of a legal services contract with Baron & Budd because (1) he asked Baron for a referral; (2) Baron accepted his request by making a referral to Greenberg; and (3) this "contract" was supported by two forms of consideration: (a) Parsons's retention of Greenberg to handle the Turley Litigation "strengthened the Baron & Budd-Greenberg relationship and better positioned Greenberg to continue his work for the firm" and (2) Baron & Budd's right to enter into a referral fee contract with Greenberg. However, Parsons did not make this argument to the trial court in his pro se response to Baron & Budd's motion for summary judgment. Therefore, Parsons cannot rely on this argument as a basis for reversing the trial court's summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679

11

(Tex. 1979); *see also* Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, *answer or other response* shall not be considered on appeal as grounds for reversal." (emphasis added)).

Parsons also argues that even if Baron & Budd did not represent him "for the referral and thereafter," Baron & Budd negligently failed to inform him of its non-representation.[8] However, negligent failure to inform of non-representation was not pleaded in Parsons's fourth amended petition, nor did Parsons make this argument in his pro se response to the motion for summary judgment. *See Clear Creek Basin Auth.*, 589 S.W.2d at 679; *see also* Tex. R. Civ. P. 166a(c). We hold that the trial court did not err by granting Baron & Budd's no-evidence motion for summary judgment on Parsons's negligence claims.

### 4. No Respondeat Superior Liability

Parsons further contends that the trial court erred by granting summary judgment against him on his assertion that Baron & Budd had respondeat superior liability for Greenberg's negligence. In its traditional motion for summary judgment, Baron & Budd included a section in which it argued that it had no liability for the alleged acts or omissions of Greenberg or his firm. And Baron & Budd attached to its motion for summary judgment an affidavit by Greenberg that

---

[8]Even in the absence of an attorney-client relationship, an attorney may be liable for negligently failing to advise a party that he is not representing the party. *Burnap v. Linnartz*, 914 S.W.2d 142, 148 (Tex. App.—San Antonio 1995, writ denied); *Kotzur v. Kelly*, 791 S.W.2d 254, 258 (Tex. App.—Corpus Christi 1990, no writ); *Parker v. Carnahan*, 772 S.W.2d 151, 157 (Tex. App.—Texarkana 1989, writ denied).

12

established as a matter of law that he was not an employee, shareholder, partner, or member of Baron & Budd; that Baron & Budd had not controlled and did not control his legal work; that he was not acting as an agent of Baron & Budd when representing Parsons in the Turley Litigation; that no one from Baron & Budd conferred upon him actual or apparent authority to act as its agent in the Turley Litigation; that his law firm is and was a separate legal entity unrelated to Baron & Budd; and that any agency relationship he had with Baron & Budd related only to his representation of Baron & Budd in unrelated matters.[9] This evidence established Baron & Budd's right to judgment as a matter of law because it affirmatively disproved any employment or agency relationship. *See generally Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 312 (Tex. 2002); *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998). Parsons's pro se response did not address Baron & Budd's respondeat superior argument, nor did it include evidence creating a genuine issue of material fact on the issue. Therefore, the trial court did not err by granting summary judgment on Parsons's respondeat superior claim. We overrule Parsons's first six issues.[10]

---

[9]In his sixteenth issue, Parsons argues that the Lance Pool affidavit, also attached to Baron & Budd's motion for summary judgment, should be struck on appeal because it is not based on Pool's personal knowledge. Greenberg's affidavit, for purposes of Parsons's respondeat superior claim, is virtually identical to Pool's affidavit. Thus, we do not reach Parsons's sixteenth issue. *See* Tex. R. App. P. 47.1.

[10]We need not address Parsons's seventh issue, in which he contends that expert testimony was not required to overcome his summary judgment burden

## B. Parsons's Remaining Claims

In issues eight through twelve, Parsons argues that the trial court erred by granting summary judgment on his claims for breach of fiduciary duty, and he argues that his alleged legal services contract with Baron & Budd "created an attorney-client relationship that in turn underpins the firm's fiduciary duties." We held above, however, that the trial court did not err by granting Baron & Budd's motion for no-evidence summary judgment because Parsons presented no evidence of an attorney-client relationship between himself and Baron & Budd. Thus, there was also no fiduciary relationship between Parsons and Baron & Budd, and the trial court did not err by granting summary judgment against Parsons on this claim.[11] We overrule issues eight through twelve.

In his thirteenth issue, Parsons challenges the summary judgment on his fraud, conspiracy to defraud, and unjust enrichment claims. One element of Parsons's fraud claim is that Baron & Budd made a false representation to Parsons that it knew was false or that it made recklessly without any knowledge of the truth. S*ee, e.g., Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*,

---

because our holdings are not dependent on whether Parsons did or did not have expert testimony. *See* Tex. R. App. P. 47.1

[11]Parsons did not argue to the trial court or in his initial brief in this court that he presented evidence of an informal fiduciary relationship; the argument is therefore waived. *See* Tex. R. Civ. P. 166a(c); *Clear Creek Basin Auth.*, 589 S.W.2d at 679; *see also Pineridge Assocs., L.P. v. Ridgepine, LLC*, 337 S.W.3d 461, 472 n.10 (Tex. App.—Fort Worth 2011, no pet.) (holding appellant waived argument by making it for the first time in its reply brief).

962 S.W.2d 507, 524 (Tex. 1998). Parsons argued in his summary judgment response that "by virtue of their long association and close friendship, Baron either knew the representation [that Greenberg was a qualified and able attorney] was false or made it recklessly without truth of its assertion." However, nothing in the summary judgment record suggests that either Baron or Baron & Budd had any belief or indication that Greenberg was not a qualified and able attorney. To the contrary, the only reasonable inference from the summary judgment evidence is that Baron & Budd believed Greenberg to be qualified and able because it used Greenberg as its own counsel. Parsons therefore failed to present evidence raising a genuine issue of material fact on this element of his fraud claim or the related conspiracy to defraud claim, and we hold that the trial court did not err by granting summary judgment on these claims.

Finally, Parsons predicated his unjust enrichment claim on his causes of action for fraud and breach of fiduciary duty.[12] Because we have held that the trial court did not err by granting summary judgment against Parsons's fraud and fiduciary duty claims, we also hold that the trial court did not err by granting summary judgment on his claim for unjust enrichment. We overrule Parsons's thirteenth issue.

_____

[12]The entirety of Parsons's pro se summary judgment response as to his unjust enrichment claim stated: "The Baron Defendant[s] state that the Plaintiff's unjust enrichment claims is [sic] predicated upon the fraud and breach of fiduciary duty allegations. Since those claims are properly before the Court, the Defendant's [sic] impliedly admit this one as well."

15

## V. Trial Court Recusal

In his fourteenth and fifteenth issues, Parsons argues that Judge Melody Wilkinson should have been disqualified from presiding over his lawsuit, and he contends that he presented "reasonable grounds for questioning Judge Wilkinson's qualifications and impartiality." In addition, Parsons argues that Judge Wilkinson's alleged lack of impartiality "could have affected her judgment regarding whether the deadline for [his] expert designations should have been increased from the two months that remained when [his] attorney was allowed to withdraw." This court previously addressed Parsons's motion to disqualify Judge Wilkinson from the underlying litigation when Parsons appealed the summary judgment in favor of Turley. *See Parsons v. Turley*, No. 02-09-00381-CV, 2010 WL 5187704, at *3–4 (Tex. App.—Fort Worth Dec. 23, 2010, no pet. h.) (mem. op.). We overrule Parsons's fourteenth and fifteenth issues for the reasons stated in our previous opinion.[13] *See id.*

---

[13]We also deny Parsons's post-submission motion that we consider his April 2011 letter brief. The letter brief attempts to inject into this appeal matters that occurred during the trial of Parsons's claims against Greenberg and Motsenbocker, and none of the information contained within the April 2011 letter brief would correct the deficiencies in Parsons's motion to disqualify Judge Wilkinson.

## VI.  Conclusion

Having overruled each of Parsons's dispositive issues, we affirm the trial court's judgment.  *See* Tex. R. App. P. 47.1.


ANNE GARDNER
JUSTICE


PANEL:  GARDNER, WALKER, and GABRIEL, JJ.

DELIVERED:  August 11, 2011